LEE HAGER ET AL. V. D. W. STAKES, TAX COLLECTOR, ET AL.

No. 4360.    Decided May 4, 1927.
(294 S. W., 835).

1.—Case Discussed—Commissioners' Decision—Oil Leases.

The rendition by the Supreme Court of the judgment recommended by the Commission of Appeals is an approval merely of the action recommended, not of the principles announced in their opinion. The judgment pronounced by the court in the case of Caruthers v. Leonard, 254 S. W., 782, 783, was a correct disposition of the case, but not an approval of the opinion of the Commission that the lease for oil production there discussed vested title in the lessee to all the minerals in place, which was not a conclusion necessary to the judgment.    (P. 463).

2.—Cases Discussed—Oil Leases on Royalty.

The cases of Jones v. O'Brien, 251 S. W., 208; O'Brien v. Jones, 274 S. W., 242; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Texas, 160; Texas Co. v. Davis, 113 Texas, 321; W. T. Waggoner Estate v. Wichita County, 47 Sup. Ct., 273; S. C., 298 Fed., 821, are discussed with reference to their bearing on the question whether ownership of a royalty in oil to be produced is an interest in the realty and taxable as such.    (Pp. 463-466).

### 3.—Oil Production—Royalties—Interest in Land.

The status as real or personal property of the right to royalties in oil to be produced from the land under contracts or leases by the owner is determined by the rules recognized by decisions in this State as follows:

(1)    Minerals in place are realty, and as such are subject to ownership, severance and sale.    Texas Co. v. Daugherty, 107 Texas, 234; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Texas, 160.

(2)    Severance may be accomplished by conveyance of the minerals or by reservation in a sale.    Humphreys-Mexia Co. v. Gammon, 113 Texas, 256,

(3)    One who owns a tract of land or an undivided interest therein, including the minerals, can be divested of his interest in minerals in place only by a deed containing words sufficient to operate as a conveyance of an interest in land.    W. T. Waggoner Estate v. Wichita County, 47 Sup. Ct., 273; States Oil Corp. v. Ward, 236 S. W., 446.    No technical words are necessary, but effect will be given to whatever language discloses the intent to divest the owner of his mineral estate in whole or in part.

(4)    Real estate is ordinarily taxed as a unit.    Yet where there have been severances by conveyance, exception or reservation, so that one portion of the realty belongs to one person and other portions to others, each owner should pay taxes under proper assessment against him of the portion owned by him.    The fact that a portion may consist of minerals or of a fractional interest therein makes no difference.    State v. Downman, 134 S. W., 795; Downman v. Texas, 237 U. S., 356, 357.    (Pp. 471, 472).

### 4.—Oil Leases—Contract—Royalty.

Leases of the land by the owner for oil production without conveyance of the minerals in place to the lessee, but providing that the lessor should receive as royalty a definite part of the oil produced and the rest should be the property of the lessee clearly left the lessor's part of the oil continuing to be his and an interest of his in the realty.    (Pp. 466-468).

### 5.—Same—Grant Reserving Royalty.

Where the oil lease granted the minerals to the lessee "subject to the royalties reserved," the reservation being of one-eighth of the oil produced to be delivered to the lessor in the pipe line, the lessor's interest continued to be an interest in the realty, the lessee being invested with only a seven-eighths interest in the oil in place.    (Pp. 466-468).

### 6.—Same—Conveyance of Interest in Land.

Where the contract conveyed to the lessee a fee simple interest in the land, part of the consideration being cash and part an one-eighth of the oil produced therefrom, to be delivered at the well or in any connecting pipe line, the covenant therefor to run with the land and to bind subsequent grantees thereof, despite the positive terms of the grant it disclosed a purpose to except therefrom the one-eighth of the oil to be produced.    The grantor's interest in this royalty was not in a mere personal covenant of the grantee, but was a reserved interest in the land remaining to the grantor out of his interest therein.    Corsicana Pet. Co. v. Owens, 110 Texas, 570.    (Pp. 468-470).

### 7.—Oil Lease—Royalty—Right of Lessee to Buy.

A lease of land for oil production not conveying the minerals in situ to the lessee, but providing for the delivery to the lessor of one-sixth of the oil produced, or for its purchase by the lessee without delivery, at his option, at current market prices, left unimpaired the lessor's ownership of the one-sixth of the oil in situ as an interest in the land.    (Pp. 470, 471).

8.—Taxation.

In all the foregoing cases the royalty interest of the lessor, remaining an interest in the real estate itself, was taxable as such in the county in which the land was situated. (P. 472).

Questions certified from the Court of Civil Appeals for the Ninth District, in an appeal from Orange County.

*J. S. Handy,* for appellants.

Royalty on oil, gas and other minerals is personal property and is not subject to tax as an interest in real estate. Texas Co. v. Daugherty, 107 Texas, 234; Stephens Co. v. Mid-Kansas Oil & Gas Co., 254 S. W., 290; Texas Co. v. Davis, 254 S. W., 304; Munsey v. Marnet Oil & Gas Co., 254 S. W., 311; Thomason v. Ham, 254 S. W., 316; Caruthers v. Leonard, 254 S. W., 782.

Oil or money received as royalty on oil, gas or other minerals produced under a lease conveying all of the oil, gas and other minerals to lessee, can be taxed only as to quantity or amount in possession on January 1. Rev. Stats., Art. 7508; Carter v. Tyler County, 43 L. R. A., 727; State v. South Pa. Oil Co., 42 W. Va., 1020.

In Minnesota the taxing statute is almost identical with Art. 7504, and the Supreme Court of that State has held that royalty under a mineral lease is not taxable as an interest in real estate. State v. Royal Mineral Assn., 156 N. W., 128.

Art. 7508 of Vernon's Sayles' Civil Statutes provides that the assessment of personal property shall be made "with reference to the quantity held or owned on the first day of January in the year for which the property is required to be listed or rendered," and if the Tax Assessor of Orange County, in pursuance of this statute, had gone to Lee Hager on the first day of January, 1923, and required him to return a list of his personal property, under oath, he surely could not have returned one gallon of oil as the prospective product of any of his royalties for the year commencing January 1, 1923, for the plain reason that no portion of the oil underlying the lands while it remained beneath the surface was his.

In Thornton's Law of Oil and Gas, 4th Ed., Vol. 2, p. 1584, it is said "after the minerals have been severed from the soil they become the personal property of the lessee—and taxable to him." Citing Forbes v. Gracey, 94 U. S., 762, and State v. Downman, 134 S. W., 787, affirmed in 231 U. S., 354, 34 Sup. Ct., 62, 58 L. Ed., 264, and Shaw v. Watson, 151 La., 839, 92 So. Rep., 375. The court held in the Downman case that where the title to minerals had passed out of the owner of the surface,

while properly taxable to the owner, it could not be taxed with the surface. See also the following cases: Guffey v. Smith, 237 U. S., 101.; People v. Bell, 237 Ill., 332, 86 N. E., 593, 19 L. R. A. (N. S.), 746; 15 Anno. Cases, 511; Thornton's Law of Oil and Gas, 4th Ed., Vol. 1, p. 100, Sec. 27. The conclusion is irresistible that, under leases from Lee Hager, all oil and gas passed to lessees. That if in and under lands on January 1, 1923, it was taxable against owners of the mineral leasehold estates. No part of the oil or gas could become Hager's property until after actual delivery to him.

*Thompson & Barwise,* by permission, also filed a brief as *amici curiae* in support of the positions of appellant.

*Dan Moody,* Attorney-General, and *R. J. Randolph,* Assistant, for appellees.

An oil royalty is to be listed or rendered by the owner as a royalty under the statute with description and the value thereof separate and apart from the surface estate. We are unable to see that it makes any difference so far as taxation is concerned who owns the royalty, whether it remains in the original lessor or has been assigned and transferred to another. If the royalty, which is simply the purchase price to become due, be owned by the original lessor, the surface estate must be listed and rendered as real estate separate and apart from the oil royalty, and such an oil royalty must be listed as a royalty under personal property, separate and apart from the surface rights in the land.

Oil royalty takes its *situs* at the place of development and is subject to taxation in the county in which the land is situated. Art. 7153, Rev. Stats.

We have concluded that the Beaumont Court of Civil Appeals has correctly stated in its certificate the effect of the holdings in the cases cited, and that the certified questions submitted should be answered by this court to the effect that the oil royalties involved are personal property and subject to taxation, and, where unaccrued, to be characterized as effects and valued accordingly by the owner in listing and rendering the same for taxes, and where accrued but not actually received, to be characterized as credits or as claims for a valuable thing and valued accordingly by the owner in rendering the same for taxes. And, further, that the owner of such a royalty, whether he is the owner of the surface estate or a stranger thereto, should list and render such a royalty for taxes separate and apart from his

interest in the surface estate, and further, that the royalty takes it *situs* at the place of development and is subject to taxation in the county in which the land is situated.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

The certificate of the Honorable Court of Civil Appeals for the Ninth Supreme Judicial District is as follows:

"TO THE HONORABLE SUPREME COURT OF THE STATE OF TEXAS:

"This is an appeal from an order of the District Court of Orange County, sustaining a general demurrer to appellants' petition. The nature of their petition and the issues involved are thus stated by them in their brief:

" 'On January 1, 1923, Lee Hager was the owner of the fee simple title to certain lands in Orange County, Texas, and the owner of a royalty interest in the oil produced from these lands, and in addition, was the owner of an interest in the oil produced from certain other lands in which he had no claim to the surface, or other title to any of the oil, gas or other minerals under such land. About December 1, 1923, Lee Hager transferred and assigned all of these interests to the Federal Royalty Company.

" 'Subsequent to the first of January, 1923, the Tax Assessor of Orange County assessed to Lee Hager the interests above mentioned, these assessments being for the purpose of assessing the royalties as an interest in the lands designated. Objection was made by Lee Hager before the County Board of Equalization to these assessments on the ground that the law did not permit the assessment of royalty interest. The Equalization Board, however, confirmed the assessments as placed upon the tax rolls and the tax collector demanded payment of the taxes thereon. This suit was brought to enjoin the tax collector from further attempting to collect such taxes and to enjoin the county assessor and county commissioners from further assessing for taxation any royalty interest owned by Lee Hager or the Federal Royalty Company.

" 'Upon trial of the case, it was agreed that Lee Hager was the owner of the properties described in the petition, subsequent to the conveyances which were fully set out in the petition, and that for the purpose of this suit, the valuations assessed were correct.

" 'The petition shows that prior to January 1, 1923, Lee Hager was the owner of a tract of 3.94 acres of land in Orange County,

Texas, and that prior to January 1, 1923, he had executed an "oil and gas lease" to the Atlantic Oil Producing Company, which is fully set out in the pleading, and in which the following language is used:

" ' "Know All Men by These Presents: That Lee Hager, of Harris County, State of Texas, herein called lessor, whether one or more, does hereby lease, demise and let unto the Atlantic Oil Producing Company, herein called lessee, and to its heirs, successors and assigns, the herein described premises for the purpose and with the exclusive right of exploring, mining, drilling and operating for oil, gas, coal, sulphur, lignite, salt and other minerals or water, with the right to erect, maintain, use and remove all buildings, etc."

" 'The consideration for this contract is stated to be $10.00, and the further obligation with reference to the payment of royalty:

" ' "Should oil be found in paying quantities in any well, drilled by lessee upon the above described premises, lessee agrees to deliver to lessor in pipe line (lessor paying pipe line charges), or settling tanks with which lessee may connect the well or wells, the equal one-sixth part of all the oil produced and saved from such premises, the balance of such oil being the property of lessee."

" 'The contract contains further provisions with reference to royalty to be paid on gas or other minerals.

" 'The petition further shows that prior to January 1, 1923, Lee Hager was the owner of a sixteen-acre tract and an undivided four-fifths interest in an 11.99-acre tract in the Bradley Garner Survey, and that prior to January 1, 1923, he had executed a conveyance to the Farish-Watts-Collins, Inc., an instrument which is fully set out in the amended petition, and which contains this provision:

" ' "The purpose of this lease is such that so long as it remains in force the lessee shall have the exclusive right to prospect and drill on said land for oil and gas and remove the same therefrom; to erect and maintain thereon and remove therefrom all necessary and proper structures and equipment, * * * and subject to the royalties hereinafter reserved, all of the oil and gas in and under said land is hereby granted and conveyed to the lessee.

" ' "The royalties reserved by the lessor and which shall be paid by the lessee are:

" ' "(a) On oil, a quantity equal to one-eighth of all produced and saved, the same to be delivered at the wells or to the credit

of the lessor in the pipe line to which the wells may be connected."

" 'That on the 21st day of May, 1923, the title to the oil, gas and other minerals described in the foregoing instrument, reverted to the plaintiff, Lee Hager, and on the same day the said Lee Hager executed an instrument to W. M. McMahon, which instrument contained the following provision:

" ' "The purpose of this lease is such that so long as it remains in force, the lessee shall have the exclusive right to prospect and drill on said land for oil and gas and remove the same therefrom; to erect and maintain thereon and remove therefrom all necessary or proper structures and equipment. * * * And subject to the royalties hereinafter reserved, all of the oil and gas in and under said land is hereby granted and conveyed to the lessee.

" ' "The royalties reserved by lessor and which shall be paid by lessee, are:

" ' "(a) On oil, a quantity equal to one-eighth of all produced and saved, the same to be delivered at the wells or to the credit of the lessor in the pipe line to which the wells may be connected."

  *  *  *  *  *  *  *  *

" 'That prior to January 1, 1923, Lee Hager was the owner of an undivided interest in 11.99 acres of land out of the Bradley-Garner Survey, but that on the 28th day of September, 1921, he, joined by W. M. Gunstream, executed to the Atlantic Oil Producing Company an instrument which contains the following provisions:

" ' "Know All Men by These Presents: That Lee Hager, of Houston, Harris County, Texas, and W. M. Gunstream, of Orange County, Texas, herein called lessor, whether one or more, does hereby lease, demise and let unto the Atlantic Oil Producing Company, herein called lessee, and to its successors and assigns, the herein described premises, for the purpose and with the exclusive right of exploring, mining, drilling and operating for oil, gas, coal, sulphur, lignite, salt and other minerals, or water; with the right to erect, maintain, use and remove all buildings, structures, etc."

" 'The consideration for the instrument is stated to be $10.00 and the further provision with reference to the payment of royalty, to-wit:

" ' "Should oil be found in paying quantities in any well drilled by lessee upon the above described premises, lessee agrees to deliver to lessor in the pipe line (lessor paying pipe line charges),

or settling tanks, with which lessee may connect the well or wells, the equal 16 per cent part of all the oil produced and saved from such premises, the balance of such oil being the property of lessee."

" 'That prior to January 1, 1923, Lee Hager was the owner of an interest in 84.06 acres of land in the S. M. Luce Survey, but that on the 26th day of June, 1913, he executed an instrument to the J. M. Guffey Petroleum Company, which instrument contains the following provisions:

" ' "Know All Men by These Presents: That for the consideration hereinafter stated, I, Lee Hager, of said Harris County, Texas, have granted, bargained, sold, and by these presents do grant, bargain, sell and convey unto the J. M. Guffey Petroleum Company, a corporation, created under the laws of the State of Texas, all of my interest, the same being seventeen-eighteenths undivided, in a tract of land in Orange County, Texas, being a portion of the Sarah M. Luce Survey, situated on Cow Bayou, located by virtue of certificate No. 36-94, issued to Sarah M. Luce and patented to J. M. Wingate, assignee, September 29, 1886, by patent No. 215, in Volume 26, said patent being recorded in the Deed Records of Orange County, Texas, in Book 2, p 425, etc."

" 'It also contains the following provisions:

" ' "The considerations for this conveyance are as follows:

" ' "First—Two thousand two hundred thirty-eight and 81/100 ($2,238.81) dollars, paid by the J. M. Guffey Petroleum Company, the receipt whereof is hereby acknowledged, and

" ' "Second—One-eighth of seventeen-eighteenths of all petroleum which said J. M. Guffey Petroleum Company, its successors and assigns hereunder may produce and save from the land above described, such portion of the petroleum to be delivered free of expense to me, the said Lee Hager, my heirs or assigns, at the well or at my or their option into any pipe line which may connect with the well."

" 'This instrument also contains the following provision:

" ' "It is agreed that no obligation is imposed on said J. M. Guffey Petroleum Company, its successors or any holder of title under it, to drill or operate for oil on said premises, but that I, the said Lee Hager, my heirs and assigns, shall have such part of such petroleum only if and when produced."

" 'That prior to January 1, 1923, the said Lee Hager was the owner of a tract of 22.14 acres of land in the Wm. Dyson League, but that on the 12th day of October, 1920, the said Lee Hager

executed an instrument to the Gulf Producing Company, which contains the following provisions:

" ' "Know All Men by These Presents: That we, Lee Hager and P. S. Moore, of the County of Harris, State of Texas, hereinafter called lessor (whether one or more), have and by these presents do hereby lease, demise and let unto the Gulf Producing Company, hereinafter styled lessee, the tract of land hereinafter described, with the exclusive right of exploiting the same for and producing oil and gas therefrom, and to that end also grant the exclusive right of drilling and operating thereon, for oil and gas, together with rights of way for telephone and telegraph lines and right to lay pipe lines and operate the same, etc."

" 'This instrument contains the following provision:

" ' "If oil shall be found on said premises, lessee shall deliver as royalty to lessor, free of expense, one-sixth part of the oil saved from that produced, after deducting such part as may be used for drilling and operating on the land and treating the oil or gas so as to make it merchantable; such delivery to be made either into tanks supplied by lessor with connections by lessor provided, or into any pipe line that may be connected with the well; or lessee may, at lessee's option, buy such royalty oil, paying the current market price in the field at the time of production."

· " 'The pleadings further show that on January 1, 1923, Lee Hager was the owner of the fee simple title to a tract of 3.312 acres of land in the Wm. Dyson league, taxes on which the plaintiff offered to pay and tendered the registry of the court.

" 'The plaintiffs' petition shows that said Lee Hager is assessed with 8.08 acres of land, but alleges that said Lee Hager did not own any such tract of land and that as a matter of fact no such tract of land existed. This allegation is supported by affidavit of Lee Hager.

" 'The basis of the appeal from the judgment sustaining a demurrer to plaintiffs' petition, denying the injunction and dismissing the suit is strictly a question of law, the trial court holding that royalty on oil and other minerals is an interest in real estate and subject to taxation.'

"As we understand the holding of the Commission of Appeals in Jones v. O'Brien, 251 S. W., 208, the royalty interest retained by a lessor in the oil and minerals conveyed to the lessee by leases of the character involved in this case is personal property. Again, as we understand the holding in Stephens County v. Mid-Kansas Oil & Gas Company, 113 Texas, 160, 254 S. W., 290, the effect of such leases is to sever the estate in the oil and other

minerals in place from the other interests in the land described in the leases and to vest in the lessee, as was said by the Commission of Appeals in Caruthers v. Leonard, 254 S. W., 782, 'a determinable fee or fee simple determinable' and not 'an estate upon conditions subsequent.'

"Again, as we understand your holding in the Stephens County case, Caruthers v. Leonard, supra, and Texas Company v. Davis, 113 Texas, 321, 254 S. W., 304, the effect of such conveyances is to vest in the lessee the title to *all* the oil and other minerals in place and to leave nothing in the lessor but the possibility of reverter and the right to receive his profit from the exploitation of the land by the lessee or his assigns.

"However, these conclusions do not, as we understand this case, answer the questions of law, presented, and being in doubt as to their proper solution, we most respectfully certify for your consideration the following questions:

"*Question No. 1:*   Have we correctly stated the effect of your holdings in the cases cited, supra?

"*Question No. 2:*   If the 'royalty' interest retained by the lessor under the leases involved herein is 'personal property,' then is it of that nature for all purposes, including taxation, or for taxation purposes is it one of 'the rights and privileges belonging or in any wise appertaining' to the land described in the conveyances, as enumerated by Art. 7504, Vernon's Sayles' Civ. Stats., defining 'real property' for the purposes of taxation?

"As bearing on this question, we would cite Mount Sterling Oil & Gas Company v. Ratcliff, (Ky.) 104 S. W., 993.

"*Question No. 3:*   Is the royalty interests retained in the instruments involved in this suit *property* within the meaning of Art. 7503, Vernon's Sayles' Civ. Stats., which provides: 'All property, real, personal or mixed, except such as may be hereinafter expressly exempted, is subject to taxation, and the same shall be rendered and listed as herein prescribed.'

"*Question No. 4:*   If you answer Question No. 3 in the affirmative, then against whom is such interest taxable:

"(a) When the royalty interest is retained and owned by the original lessor and used and enjoyed by him in connection with his surface rights and as an incident of the ownership of the fee in the land;

"(b) When the original lessor has sold his royalty interest in his land and it is owned by parties other than himself and the lessee and his assigns, that is to say, when the surface rights and the fee in the land subject to the lease is owned by A, the interest in and under the lease is owned by the lessee, B, or

his assigns, and the royalty interest is owned separately by a third person, C?

"In further explanation of this case, we state that it appears from appellants' petition that they own the fee and royalty in certain of the lands within the terms of Subdivision (a) of this question, and that in the other lands they own only a royalty interest within the meaning of Subdivision (b) of this question.

"*Question No. 5:* If the royalty interest as retained by the instruments involved in this suit is subject to taxation, in what county is it taxable, in the county where the land to which the royalty appertains is situated, or in the county where the owner lives and has his habitat for the purposes of taxation? In this case the land is situated in Orange County, while the owners of the royalty interest live and have their habitat for the purposes of taxation in Harris County."

There are statements in the opinion in Caruthers v. Leonard, 254 S. W., on pp. 782 and 783, to the effect that the lease there discussed did vest little in the lessee to all the minerals in place, leaving the lessor nothing save a possibility of reverter. The opinion in that case was by the Commission of Appeals and was not adopted by the Supreme Court, and therefore the court did no more, as has repeatedly been pointed out, "than to simply adopt the view of the Commission as to the determination to be made of the cause." McKenzie v. Withers, 109 Texas, 256, 206 S. W., 503; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Texas, 167, 254 S. W., 290, 29 A. L. R., 566. The Caruthers case was rightly determined, regardless of the legal effect of the lease in reserving a mineral estate to the lessor; for Leonard was not entitled to recover any part of the rentals for which he sued, because the writing under which he claimed expressly stipulated that if the lease under which the rentals accrued was valid, then he (Leonard) bought subject to all the terms of such lease, and the lease was valid and one of its terms provided for the payment of such rentals.

Jones v. O'Brien, 251 S. W., 208, which was correctly followed in O'Brien v. Jones, 274 S. W., 242, determined nothing except that parties may contract for the sale of oil as personality, after its severance from the soil, and that such a contract is without the statute of frauds. The gist of Judge German's opinion is summarized in these sentences:

We think the petition is very reasonably susceptible of the construction that defendant in error intended to allege that the only subject of the contract between him and Jones was the

interest in the one-eighth royalty, as commonly understood; that is, an interest in the oil after being separated from the soil and placed in pipe lines or other depositories, or an interest in the money value thereof. As against a general demurrer we think the petition should be given this construction as coming within its intendments. Upon a trial, if it should be found as a matter of fact that the parties were contracting with reference to the entire subject-matter of the conveyance from Hand to O'Brien, plaintiff in error may urge all such rights as he may have under the statute of frauds, as applied to that character of contract. * * * Construing the petition as alleging a contract relating to personality, the statute of frauds has no application."

The cases of Stephens County v. Mid-Kansas Oil and Gas Company, 113 Texas, 160, 29 A. L. R., 566, 254 S. W., 290, and Texas Company v. Davis, 113 Texas, 321, 254 S. W., 304, do not decide that such leases as are here involved invest the lessees with title to all the oil and minerals in place and leave the lessors nothing but possibilities of reverter and rights to portions of oil and other minerals when reduced to personal property.

In neither case was the question argued by counsel for any party as to whether the lessee owned all the minerals or only a fractional interest in the minerals. The question certified in the Stephens County case was whether the Mid-Kansas Oil & Gas Company acquired "such interests or estates in land," under the recited leases, as were subject to separate taxation. The answer to the question was that the company did acquire "interests and estates in the lands which were subject to separate taxation."

The instruments under which the Mid-Kansas Oil & Gas Company claimed its rights or estates were certified to have been substantially in the form of the lease set forth in 113 Texas Reports at pp. 164 and 165. The court held that these instruments gave the lessee the exclusive right to possess, use and dispose of the gas and oil in place, for terms which might never end, and concluded that therefore the instruments invested the lessee with title to the oil and gas, since "dominion over a thing could not well be completer than it is in those persons who may, at their will, assign it to any person with or without consideration, for a time which may be forever." In the sentence first announcing the conclusion that the minerals became the property of the lessees, the court took pains to point out that the lessee did not have to deliver any portion of the gas or oil to the lessors, or their assigns, but could pass title to all of the gas and oil to a purchaser.

The suit by Davis and others against the Texas Company and others was, as shown by the opinion, "for the recovery of 9/10ths the oil, gas, and other minerals." 113 Texas, 330. Since the right of the assigns of those granting the original lease in the Davis case was not challenged to the fractional portion, viz.: one-tenth, of the minerals, which was deliverable to the lessors or their assigns, no such questions as are here presented could arise in the Davis case. Moreover, clauses appear in the lease set out in the Davis case, as at page 328, which may grant full power of disposition of all the minerals to the lessee and authorize him to make, at the end of each quarter, purely monied settlements therefor.

In considering whether the lessor was properly taxed as owner of one-eighth the oil reserved for delivery to him under a certain lease, the Supreme Court of the United States recently said, through Associate Justice Stone:

"The case of Stephens County v. Mid-Kansas Oil & Gas Co., supra, is relied upon by appellants, but in that case the lease, in other respects similar to those now under consideration, provided that the lessee at his option should pay the stipulated royalties in oil or cash. It thus conferred on the lessee the essentials of ownership—possession, with unrestricted power of appropriation and disposition of the oil. The lessee was therefore properly taxed as owner. The considerations which led to that result lead to the conclusion here that the ownership of the royalty oil remained in the lessor who retained the power of disposition and the right to receive possession, and that his interest was properly taxed as realty." W. T. Waggoner Estate v. Wichita County, 47 S. Ct., 273.

Precisely the same distinction was drawn between the leases involved in the Stephens County case and those here involved by the United States Circuit of Appeals for the Fifth Circuit, when it declared in the case of W. T. Waggoner Estate v. Wichita County, 3rd Fed. Rep. (2d Series), at page 964.

"No provision was made for the lessee becoming the owner of the part of the oil produced which was required to be delivered to the lessor. In this respect the instruments in question are materially different from the one which was under consideration in the case of Stephens County v. Mid-Kansas Oil & Gas Co., 113 Texas, 160, 254 S. W., 290, 29 A. L. R., 566. By the terms of the instrument which was in question in that case the lessee was required to pay to the lessor 10 per cent of the market price of gas produced, and, as to oil produced, the lessee was given the option of delivering one-eighth thereof to the lessor or paying

to him the market price in cash thereof. It was held that that instrument gave the lessee therein dominion over the oil and gas in the land described. * * * As above indicated, the leases in question in the instant case do not evidence a purpose to give to the lessees therein ownership, dominion of, or the right to dispose of the part of the oil produced which was required to be delivered to the lessor, and those instruments contain no provision under which the lessees could acquire or become entitled to that part of the oil produced."

In determining the Waggoner case in the District Court for the Northern District of Texas, Judge Atwell said:

"The Supreme Court of the State of Texas, in the cases of Texas Co. v. Daugherty, 107 Texas, 226, 176 S. W., 717, L. R. A., 1917f, 989; Stephens County v. Mid-Kansas Oil & Gas Co. (Texas Sup.), 254 S. W., 290; Humphreys-Mexia Co. v. Gammon (Texas Sup.), 254 S. W., 297; Texas Co. v. Davis (Texas Sup.), 254 S. W., 304; Robinson v. Jacobs (Texas Sup.), 254 S. W., 309, and Munsey v. Marnet (Texas Sup.), 254 S.W., 311—has been equally emphatic in holding that the oil in place—all mineral—is realty and subject to taxation. Even without Federal court holdings, the Constitution, the Legislature, and the highest court of the State, speaking to the same effect with reference to a subject, would indicate not only a ruling action, but a public policy, that might not be contradicted in any other jurisdiction, when in that jurisdiction a construction of the acts of the governing officers of that State were being scrutinized, with the thought of undoing what they had done in harmony with their own laws." Waggoner v. Wichita County, 298 Fed., 821.

Judge Atwell clearly pointed out what differentiates leases, such as those now under consideration, from the leases involved in the Stephens County case, when he added:

"There is no provision in the leases which have been offered in evidence which warrants us in finding that the lessor sold anything to the lessee except seven-eighths of the mineral. There is no right of alienation on the part of the lessee of the one-eighth royalty; the one-eighth continued to be, as it always was, the property of the lessor, and so long as it is 'in place' it is a part of the realty."

The leases from Lee Hager to the Atlantic Oil Producing Company and from Lee Hager and W. M. Gunstream, called lessor, to the Atlantic Oil Producing Company, which are set out in the certificate and copied in full in the accompanying transcript, each recite for consideration a small money payment and the lessee's obligation to deliver to the lessor in pipe line or settling

tanks a stated fraction of all oil produced and saved from the premises. Each lease demises and lets certain land to the lessee for the purpose and with the exclusive right to drill and mine and produce the minerals. Each of these leases provides for the payment to the lessor of stipulated sums of money for gas wells and of reasonable royalty on any other minerals produced save oil and gas. There is no express grant of all the minerals. There is nothing in either lease to authorize the lessee to appropriate the portion of the oil required to be delivered to the lessor. On the contrary, each lease, after providing for the delivery of a stated fraction of oil to the lessor, contains this significant language: "the balance of such oil being the property of lessee." And, when each lease makes provision for the payment of reasonable royalty on minerals other than oil and gas, it continues "and the minerals so produced, *royalty excepted,* shall be the property of lessee." Assuming, as does the certificate of the Honorable Court of Civil Appeals, that the lessor in each of these leases owned each tract of land leased, or an undivided interest therein, at the time each lease was executed, and bearing in mind that the minerals or any portion thereof could be severed and separately owned, and that the minerals or a fraction of same could be conveyed, in place, only as part of the realty, there is no escape from the conclusion that the portion of the oil and other minerals not conveyed but required to be delivered to the lessor continued to belong to the lessor, and continued to be realty.

Such was the conclusion of the United States Supreme Court in the Waggoner case, where the court said:

"It is to be noted that the leases contain no words of grant of the minerals as such, but the lands are demised solely for the purpose of drilling and mining. The lessees are in terms given neither title, right of appropriation nor power of disposition of the share of the oil which is to be delivered to the lessor when severed from the soil. * * * In the absence of controlling authority in the Texas courts, we can find in the terms of the leases themselves no basis for the contention that the lessor granted or conveyed away his entire interest in the oil." W. T. Waggoner Estate et al. v. Wichita County et al., 47 S. Ct., 273.

The language of each lease to the Atlantic Oil Producing Company defining the property of the lessee as not all the oil but only the remainder after the delivery of the lessor's portion, refutes the contention that the contracting parties ever intended all the oil to become the property of the lessee. Equally

conclusive is the language defining the extent of the lessee's property right in the other minerals save oil and gas.

The instruments executed by Lee Hager to Farish-Watts-Collins, Inc., and to W. M. McMahon are in almost identical language. They would have the same legal effect in so far as concerns the questions certified. Each instrument leases one tract of land and an undivided interest in another for the purpose of conferring on the lessee the exclusive right to prospect for and produce oil and gas therefrom. The grant of minerals is made in the following words: "And *subject to the royalties hereinafter reserved* all of the oil and gas in and under said land is hereby granted and conveyed to the lessee. The royalties reserved by the lessor and which shall be paid by the lessee are: (a) on oil a quantity equal to one-eighth of all produced and saved, the same to be delivered at the wells or to the credit of the lessor in the pipe line to which the wells may be connected, (b) on natural gas, at the rate of two hundred dollars per annum, payable quarterly, for each well producing gas exclusively. * * * (c) on gas produced from oil wells, when such gas is used off the land or sold by the lessee and is not used for the manufacture of gasoline, at the rate of twenty-five dollars per annum for each well while the gas is being so used or sold, but when such gas is used for the manufacture of gasoline the payment, instead of at the rate last mentioned shall be at the rate of fifty dollars per annum for each well while such gas is being so used for the manufacture of gasoline." We think the parties were about as careful as could have been expected had they invoked the aid of able and experienced counsel, to use language in these instruments designed to leave no fair doubt that the lessor was meant to remain the owner, as he was before he executed the instruments, of one-eighth the oil in the leased lands. Making the grant of all the oil and gas subject to the royalties reserved could have had no other rational intent than to except from the minerals conveyed the equal one-eighth part of the oil. As said in the case of Texas Company v. Davis, supra: "Our object is to announce a rule which is truly consonant with the real intent of the contracting parties." 113 Texas, 335. We do this when we declare that the instruments now under consideration could not invest the lessee with a greater portion than seven-eighths of the oil, though clearly investing the lessee with all the gas, under the principles declared in the Stephens County case.

The intent of the parties is not so readily ascertained when we come to consider the terms of the instrument executed by

Lee Hager to the J. M. Guffey Petroleum Company. As that instrument appears in full in the transcript, Hager purports to grant and convey to the petroleum company, its successors and assigns, in fee simple forever, with covenant of special warranty, an undivided seventeen-eighteenths (17/18ths) interest in a certain 150 acres tract of land. The instrument sets out that its considerations are $2,238.80 cash, and "one-eighth (1/8th) of seventeen-eighteenths (17/18ths) of all petroleum which said J. M. Guffey Petroleum Company, its successors and assigns hereunder, may produce and save from the land above described; such portion of the petroleum to be delivered free of expense to me, the said Lee Hager, my heirs or assigns, at the well, or, at my or their option, into any pipe line which may connect with the well." Immediately after setting out the obligation of the lessee to deliver the stated fraction of oil, the instrument continues: "This covenant shall run with the land, and on sale of said interest hereby conveyed in said premises, shall pass to and become obligatory upon the successive owners of the right and title hereby conveyed. It is agreed that no obligation is imposed on said J. M. Guffey Petroleum Company, its successors or any holder of title under it, to drill or operate for oil on said premises, but that I, the said Lee Hager, my heirs and assigns, shall have such part of such petroleum only if and when produced."

We have concluded that giving effect to all the language of this instrument it does not grant or convey all the grantor's undivided 17/18ths of the petroleum in this 150 acres of land, despite the positive terms of the granting and habendum clauses. For we think a dominant purpose of the parties was to make impossible any other disposition of 1/8th of 17/18ths of this petroleum than its delivery to the lessor, or his assigns, as the property of the lessor or his assigns. Hence, no matter how poorly expressed, there being words disclosing such purpose, there is excepted from the grant the one-eighth part of the seventeen-eighteenths of the petroleum. It is obvious that the instrument negatives the view that the obligation to deliver a portion of the oil was intended to be a mere personal covenant of the lessee or its assigns. Likewise, the obligation was not meant to enure to the personal benefit of the lessor. It was meant to benefit the owner of an estate in the land and to permanently run with the land.

The controlling principle here was applied in Cravens v. White, 73 Texas, 579, 15 Am. St., 803, 11 S. W., 543, when the court said through Chief Justice Stayton:

"The concluding clause of that deed shows clearly that it was not the intention of its makers that the one hundred and twenty acres of land therein referred to should pass to appellee, and however unusual the form of the deed may be, effect must be given to the intention of the makers."

The rule is stated in 8 Ruling Case Law, Sec. 151, p. 1094, as follows:

"Whatever it may be called, whether exception or reservation, a provision intended to secure a right in the grantors that otherwise would pass to the grantee by the deed must be given effect according to the intent of the parties gathered from the nature of the subject-matter and the language used. Accordingly where there is a specific negation of intention to convey a certain part, it will be taken as excepted, as where * * * the descriptive clause recites that 'the grantor reserves the ownership of the well on or near the east line of the lot hereby conveyed'."

The court in an opinion of Chief Justice Phillips stated the legal effect of a lease to be to invest the grantee with "the right to seven-eighths of the oil if found." That lease contained language less clear than that now before us to except from the grant or to reserve to the lessor one-eighth of the minerals. For that lease "recited that the grantors, in consideration of $28.20 paid by the grantee, the receipt being acknowledged, had granted, sold, etc., unto the grantee *all* the oil, gas, coal and other minerals in and under the land described, with the exclusive right to drill, mine and operate thereon for producing oil, gas, coal and other minerals: to be held by the grantee for the term of ten years from the date of the instrument and as much longer as oil, gas or other minerals were produced in paying quantities; yielding to the grantors the 1/8th part of all oil produced and saved from the premises." Corsicana Petroleum Company v. Owens, 110 Texas, 570, 571, 222 S. W., 154, 155.

The court may have given similar effect to the royalty provisions of the oil leases purporting to grant *all* the minerals in and under the land in Texas Company v. Daugherty, 107 Texas, 236, when the court stated: "There was imposed no limit upon the grantee's right to the oil and gas, save as to the royalty payable to the grantor."

The lease of Lee Hager and P. S. Moore to the Gulf Producing Company is different from the two leases to the Atlantic Oil Producing Company in only one respect. After Hager and Moore demise the land for the purpose of exclusive oil exploration and production by the Gulf Producing Company, with the

agreement that if oil is found, one-sixth part shall be delivered to Hager and Moore, or their assigns—all substantially as in the leases to the Atlantic Oil Producing Company—Hager's and Moore's lease does not contain any express declaration as to what portion of the oil shall belong to the Gulf Producing Company, but it does contain this provision: "or lessee may, at lessee's option, buy such royalty oil, paying the current market price in the field at the time of production."

There is a radical difference between the provision of Hager's and Moore's lease requiring the lessee to buy 1/6th the oil from them, unless that portion of the oil be delivered to them, and the provision in the leases involved in the Stephens County case, which gave the lessee the option to *sell* as his own property cne-eighth of the oil produced.

We think the provision requiring the oil to be delivered to Hager and Moore or requiring it to be purchased from Hager and Moore, coupled with the absence of words sufficient to divest Hager and Moore of one-sixth of the oil, makes plain that the lease left unimpaired Hager's and Moore's title to one-sixth the oil.

Our answers to all the certified qestions might be rested on the following propositions:

First: That minerals in place are realty, and as such are subject to ownership, severance and sale, as settled by the decisions in Texas Company v. Daugherty, 107 Texas, 236, and Stephens County v. Mid-Kansas Oil & Gas Co., 113 Texas, 160.

Second: That a severance may be accomplished by means of a conveyance of the minerals or by means of an exception or reservation in a conveyance, as clearly pointed out in the opinion of CHIEF JUSTICE CURETON in Humphreys-Mexia Company v. Gammon, 113 Texas, 256, and in the cases there cited.

Third: That in every instance one who owns a tract of land or an undivided interest therein, including the minerals, can be divested of his interest in minerals in place only by a deed containing words sufficient to operate as a conveyance of an interest in land, as distinctly held in W. T. Waggoner Estate v. Wichita County, 47 S. Ct., 273, and in States Oil Corporation v. Ward, 236 S. W., 446. However, no technical words are necessary but effect will be given to whatever language discloses the intent to divest the owner of his mineral estate, in whole or in part.

Fourth: Each of the leases set out in the certificate left the lessor with an interest in minerals which was real property.

Fifth: Real estate is ordinarily taxed as a unit. Yet, where there have been severances by conveyance, exception or reserva-

tion, so that one portion of the realty belongs to one person and other portions to others, each owner should pay taxes under proper assessment against him of the portion owned by him. The fact that a portion may consist of minerals or of a fractional interest therein makes no difference, as outlined in State v. Downman, 134 S. W., 795, and Downman v. Texas, 231 U. S., 356, 357.

Sixth: The Texas Constitution and statutes leave no room for doubt that all property of every kind is subject to taxation and as long as such property consists of minerals in place or fractions of same the taxes thereon should be assessed and collected as on any other species of real estate.

We answer to Question No. 1 that your certificate correctly states the effect of certain expressions in the opinion in Caruthers v. Leonard, and incorrectly interprets the opinions in Jones v. O'Brien, and in Texas Company v. Davis, and in Stephens County v. Mid-Kansas Oil & Gas Company, which last case should be given the meaning ascribed to it by the Supreme Court of the United States, by the United Circuit Court of Appeals for the Fifth Circuit, and by the United States District Court for the Northern District of Texas.

We answer to Question No. 2 that the interests retained by the lessor under each of the leases set out in your certificate was not personal property.

We answer to Question No. 3 that the interests retained by these lessors was property and was real property within the meaning of Art. 7503, Vernon's Sayles' Texas Civil Statutes.

We answer to Question No. 4 that it is utterly immaterial whether an interest in minerals in place belongs to the original lessor or to his assign, the interest is taxable as real property.

We answer to question No. 5 that the interests of the lessors or of their assigns in the minerals involved in the leases set out in the certificate are taxable in Orange County, where the lands are situated.