**FLEMING FOUNDATION et al.,
Appellants,**

**v.**

**TEXACO, Inc. et al., Appellees.**

**No. 6968.**

Court of Civil Appeals of Texas.

Amarillo.

June 27, 1960.

Rehearing Denied Sept. 6, 1960.

Maurice Cheek, Alexander & Martin, Fort Worth, for appellants.

Jackson, Walker, Winstead, Cantwell & Miller, Dallas, W. N. Sands and J. S. Rowe, Midland, for appellees.

NORTHCUTT, Justice.

On April 1, 1949, Lela Knight and others, being hereafter referred to as individual appellants, sold to Fleming Foundation, a Texas Corporation, certain lands situated in Kent and Scurry Counties, Texas, consisting of 24,600 acres, more or less, but in said deed reserved ½ interest in all of oil, gas and other minerals in, under and that may be produced from the lands conveyed. We will hereafter refer to appellant, Fleming Foundation, as Fleming. On May 2, 1951, Fleming sold to Oscar Killian the surface only to the same 24,600 acres above mentioned but reserved and excepted to itself all of the interest and estate owned or claimed by it in the oil, gas and other minerals in, under and that may be produced from said lands. On July 26, 1952, Killian sold a certain portion of the land, above mentioned, to F. C. Le Derer but provided in the deed save and except the oil, gas and other minerals in and under such land not owned by Killian. Part of the land sold to Le Derer is the same land involved herein. In 1955, F. C. Le Derer entered into a certain lease with the Texas Company as lessee covering the land here in question granting to said lessee the exclusive right for the purposes of testing by any method for formations or structures and prospecting and drilling for and producing water, laying pipe lines, building roads, bridges, tanks, power stations, telephone and electric transmission lines and other structures and facilities necessary or convenient for the purpose of producing, saving, taking care of, treating, processing, and transporting water and conducting the aforesaid operations. The Texas Company

had its name changed to Texaco Inc., and will hereafter be referred to as Texaco.

Texaco drilled several water wells and produced and used considerable water from said wells. The individual appellants and Fleming brought the suit as plaintiffs praying that:

"Plaintiffs have judgment (proportioned between them as their respective interest, title and ownership in the sub-surface waters are found and adjudged by the court) as against Defendant, The Texas Company, for their damages in the sum of $3,707,116.50 down to and including March 31, 1959, plus $5,000.00 per day for each additional day that such Defendant wrongfully produces, converts and appropriates Plaintiffs' water as above alleged, together with interest thereon at the rate of six per cent (6%) per annum until paid. Further, Plaintiffs pray that judgment be entered establishing and declaring the respective rights, title, interest and estate of the parties hereto, in such sub-surface waters; and finding and adjudging that the acts, operations and conduct of Defendants, with respect thereto and herein complained of, have been and are wrongful and in violation and denial of Plaintiffs' rights, title and interest in said waters."

The case was submitted to the Court without the intervention of a jury. The Court on September 3, 1959 entered its judgment finding that the law and the facts were with the defendants and that the plaintiffs, appellants here, should take nothing by their suit, and further found and decreed:

"A. The reservations and exceptions of oil, gas and other minerals in the three deeds described below in this judgment did not constitute reservations or exceptions of water, and none of the grantors in any of the deeds described below in this judgment retained or reserved by such deeds the

ownership of water in the land described in such deeds including among other land the four sections of land described in Plaintiffs' petition as follows:

" 'All of Section 40 in Block K, T. A. Thompson Survey; Sections 30 and 45, in Block K, John B. Rector Survey; and Section 43 in Block K, T. A. Thompson and John B. Rector Surveys.'

and the language of the deed from The Fleming Foundation to Oscar Killian dated May 2, 1951, and further identified in the following paragraph hereof, did not exclude water from such conveyance, and the Plaintiff The Fleming Foundation did not retain or reserve by said deed the ownership of the water in the land therein described, which, among other land, includes said four sections of land described in Plaintiffs' petition.

"B. The deeds referred to above herein are described as follows:

"1. Deed dated April 1, 1949, by Lela Knight, and husband, A. J. Knight, Pearl Robertson and husband, H. L. Robertson, Ethel Robbins and husband, J. A. Robbins, and Eunice Wright and husband, D. R. Wright, Grantors, to The Fleming Foundation, a Texas Corporation, Grantee, and recorded in Volume 52, Page 395, Deed Records of Kent County, Texas.

"2. Deed Dated April 1, 1949, by Ola May Atkins, Guardian of the Estate of Dick Lilly Atkins, a minor, Grantor to The Fleming Foundation, a Texas corporation, Grantee, and recorded in Volume 52, Page 391, Deed Records of Kent County, Texas.

"3. Deed dated May 2, 1951, by The Fleming Foundation, a Texas corporation, Grantor, to Oscar Killian, Grantee, and recorded in Volume 69, Page 404, Deed Records of Kent County, Texas.

"C. That the evidence and stipulations of the parties show no acts, operations or conduct by the Defendants, or either of them, in violation of any rights of Plaintiffs, or any of them, and that The Texas Company (now called Texaco Inc.) violated no rights of the Plaintiffs, or any of them, by taking and using water from water wells on Section 30, Section 40 and Section 45, all in Block K, T. A. Thompson Survey, Kent County, Texas (said Sections 30 and 45 being the same sections described in Plaintiffs' petition as Section 30 and Section 45 of Block K, John B. Rector Survey, the Block 'K' referred to being the same block).

"D. That Plaintiffs as the owners of the oil, gas and other minerals in the land described in the deeds dated April 1, 1949, to The Fleming Foundation (further identified above) have the right to drill water wells on such land and to use water from such wells to the extent reasonably necessary for the development of such minerals. In this connection, however, the Court finds that no oil, gas or other minerals are being produced from said land or any part thereof and further finds that the alluvial formation in which the water wells drilled by The Texas Company (now called Texaco Inc.) are drilled is recharged and replenished with water from time to time from rainfall on the watershed of the Brazos River, and the water in such alluvial formation has not been depleted by said water wells drilled by The Texas Company and is not depletable by such wells.

"It is, therefore, ordered, adjudged and decreed:

"I.

"That Plaintiffs, and each of them, take nothing by this suit.

"II.

"That this judgment shall not prejudice the rights of Plaintiffs as owners of the oil, gas and other minerals in the land described in the deeds dated April 1, 1949, to The Fleming Foundation (further identified above herein) to drill water wells on said land and to use water from such wells to the extent reasonably necessary for the development and production of such minerals

"III.

"That all relief sought in this suit by Plaintiffs, and each of them, and not herein granted is hereby denied.

"IV.

"That all costs are adjudged against the Plaintiffs, jointly and severally, for which let execution issue."

From such judgment the appellants perfected this appeal.

The appellant, Fleming, presents its appeal upon four points of error as follows: That the court erred in holding surface only included the sub-surface percolating water; in not holding Fleming owned all the sub-surface percolating water that appellee had produced; if right in not holding Fleming was the owner of all the sub-surface percolating water then the court erred in not holding Fleming owned ½ of the water and that the court erred in not rendering judgment for Fleming for the value of the water taken by appellee. The individual appellants present their appeal upon three points of error as follows: The court erred in holding the individual appellants did not own ½ of the percolating water under their reservation of ½ of the oil, gas and other minerals; in not holding that water was a mineral under the reservation of ½ of all oil, gas and other minerals; and in failing to award the individual appellants judgment for the value of ½ of the sub-surface water taken by appellee.

Appellants did not ask for any damages as against Le Derer but did pray for judgment declaring that Le Derer did not own

any title to the sub-surface water in and under the land. The individual appellants contend they own an undivided ½ interest in the ownership and title to the sub-surface water, and Fleming contends it is the owner of all the sub-surface water if the reservation of an interest in oil, gas and other minerals does not include sub-surface water and if such reservation does include sub-surface water, it is the owner of an undivided ½ interest in such water. In other words, Fleming contends if the word "mineral" does not include the sub-surface water, then the individual appellants have no interest in the sub-surface water and it owns it all because when it deeded the land to Killian it deeded the surface only and thereby retained everything below the surface.

As we construe the matters here involved, there are two questions to be determined and, that is did the trial court err in holding that the reservations and exceptions of other minerals did not constitute reservations and exceptions of water, and if other minerals did not include water that Fleming by stating in its deed to Killian "subject to conditions, reservations and exceptions set out below, granted, sold and conveyed, and does by these presents grant, sell and convey unto the said Oscar Killian, the surface only," did not constitute reservations and exceptions of all the water.

■ We have not been cited a Texas case determining the exact meaning of the terms here in question in cases of this kind and neither have we found one. There are different constructions given to the term "surface." It is stated in the case of Ramage v. South Penn Oil Company, 94 W.Va. 81, 118 S.E. 162, 31 A.L.R. 1509, that the term "surface" where used as a subject of a conveyance, is not a definite one capable of a definition of universal application, but is susceptible of limitation according to the intention of the parties using it; and in determining its meaning regard may be had not only to the language of the deed in which it occurs, but also to the situation of the parties, the business in which they are engaged, and to the substance of the transactions. The court then held that the express exception of oil and gas excluded all other exceptions. Under the heading of mines and minerals, 40 Corpus Juris., pp. 755[1] states that surface rights, as used in an instrument conveying "surface rights" the term means the entire surface of the land, reserving the minerals to the grantor. In instructing the jury as to the surface of the land, Judge Dooley, in the case of the estates of Genevra O'Brien v. United States, 8 Oil & Gas Reporter, 845 stated: "What is referred to in said issue as the surface ownership and interest means not only the soil, but also any underground water supplies at all depths under the land, and, on the other hand, excludes the oil, gas and other minerals therein." This statement, if correct, and we believe it is, would dispose of both issues as to the surface estate and also that the term "other minerals" does not include water.

■ What was actually purchased, as expressed in a deed, must be deduced from the entire instrument and from all its provisions considered together, and not from specific provisions or fragmentary parts of the deed. In Marquette Cement Mining Co. v. Oglesby Coal Co., D.C. 253 F. 107, 111 it is stated: "The word 'surface' in mining controversies means that part of the earth or geologic section lying over the minerals in question, unless the contract or conveyance otherwise defines it. It is not merely the top of the glacial drift, soil, or the agricultural surface." Under the Marquette case *only* (emphasis ours) would be construed as all the land over the minerals that Fleming reserved. If that part of the deed from Fleming to Killian stating *surface only* (emphasis ours) was intended as only that part of the land which is capable of being used for agricultural purposes, there would have been no necessity of reserving the oil, gas and other minerals, because Fleming would have owned the oil, gas and other minerals without excepting them in the deed. We are of the opinion that under

1. See also 58 C.J.S. Mines and Minerals § 3.

the deed the use of the word "only" was to emphasize that Killian was not getting any of the oil, gas or other minerals. The estate owned by Fleming was the surface realty and ½ of all the oil, gas and other minerals. Fleming could and did sever its estate in oil and gas from its estate in the remainder of the realty and did so by reserving the oil, gas and other minerals, and thereby the two estates became separate and distinct. When Fleming excepted the oil, gas and other minerals and did not except anything further, we think the correct interpretation of the deed would be that it transferred all its interest in the land other than what it excepted and thereby severed ½ of the minerals from the surface estate. The Supreme Court in the case of Grissom v. Anderson et al., 125 Tex. 26, 79 S.W.2d 619, 621 said:

"Second. The owner of land may sever his estate in oil and gas from his estate in the remainder of the realty either by granting away his estate in oil and gas, or by conveying his estate in the surface realty and reserving or excepting his estate in the oil and gas. Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S.W. 296, 29 A.L.R. 607.

"Third. When the estates are so severed, they are separate and distinct. Hager v. Stakes, 116 Tex. 453, 294 S.W. 835. Lemar v. Garner, 121 Tex. 502, 50 S.W. (2d) 769.

"Fourth. After the mineral estate has been severed by grant, possession of the surface by the grantor is not possession of the minerals, and such possession is not, therefore, adverse to the owner of the minerals. Elliott v. Nelson, 113 Tex. 62, 251 S.W. 501; Green v. West Texas Co. (Tex.Civ. App.) 225 S.W. 548."

█ The intention of the parties to a deed is the paramount consideration, and their intention is to be gathered from a consideration of the entire instrument taken by its four corners. A deed will be construed most strictly against the grantor. City of Stamford v. King, Tex.Civ.App., 144 S.W. 2d 923 (writ refused). A deed will be construed to confer upon grantee the greatest estate that the terms of the instrument will permit. Waters v. Ellis, 158 Tex. 342, 312 S.W.2d 231 by the Supreme Court.

█ We are of the opinion, and so hold, that transfer by Fleming of the surface only, and the reservation and exception of all the interest and estate owned or claimed by it in the oil, gas and other minerals in, under and that may be produced from said land and that the non-mineral portion of the land, the portion which covers and envelopes the minerals, is called the surface and was the property covered in the deed from Fleming to Killian. In other words, we think, it may be said, generally, that a conveyance of the surface only in a tract of land with a reservation of the minerals vests in the grantee such rights to the use thereof as are usually exercised by owners in fee subject only to the right of the grantor to remove the minerals reserved. Then we must determine if water was one of the minerals reserved by appellants.

█ What we have said above about the intention of the parties to a deed being the paramount consideration will apply also in determining what is intended by the term "other minerals." In construing a reservation of minerals in a deed regard must be had, not only to the words used to describe the things reserved, but to the relative portion of the parties interested, and to the substance of the transaction or arrangement which such deed embodies. There is no question in this case but what the real intention of the appellants was to retain the minerals. Neither is there any doubt about water being technically a mineral. We think the question whether a given substance is or is not a mineral within the meaning of the deeds in which the reservations are made is a question of fact to be decided according to the circumstances of the particular case. For example, were the terms such as to constitute a like sub-

stance? The rule in Texas seems to be where specific things are followed by some general term such general term must refer to things of the same kind; but when the general term precedes the specific it is different. In the case of Stevenson v. Record Pub. Co. et al., Tex.Civ.App., 107 S.W.2d 462, 464 (writ dismissed) it is stated:

"We do not understand the rule of ejusdem generis to be applicable where, as here, the general words or phrase precedes the specific and when the language of the judgment wholly fails to indicate an intention to limit or qualify the descriptive language of the mortgage. The maxim is held to be applicable 'where an enumeration of specific things is followed by some more general word or phrase' and that where such situation exists 'such general word or phrase is to be held to refer to things of the same kind.' As we understand it, the reverse of the stated situation here exists."

We do not think water is a thing of like kind to oil and gas.

 Appellants stated in their oral argument that the owner of the "surface only" had the right to use all the water he needed for general use on the land including the right to irrigate his crops. If the appellants reserved all the water, the owner of the "surface only" would not have any more right to produce and use the water than he would to produce and use all the gas he needed for general use on the land. We are of the opinion that in deciding whether or not in a particular case exceptional substances are minerals that the true test is what that word means in the vernacular of the mining and mineral industry, the commercial world and the land owners at the time of the grant, and whether the particular substance was so regarded as a mineral. The mineral rights are to be interpreted according to their ordinary and natural meaning where there is no manifestation of an intention expressed in the deed to use them in a scientific or technical sense. Heinatz et al. v. Allen et al., 147 Tex. 512, 217 S.W.2d 994.

We approve the holding of the Oklahoma Court in the case of Vogel et al. v. Cobb, Okl., 141 P.2d 276, 148 A.L.R. 774, where it held "other minerals" referred to minerals of the same generic class as oil and gas and did not include water. We think the holding in the Vogel v. Cobb case should be the rule in this state and we hold that the reservation of oil, gas and other minerals does not include the sub-surface water.

We think the trial court rendered the proper judgment and overrule all of appellants' assignments of error.

Judgment of the trial court is affirmed.