Earnest O. GILLAM et al., Appellants.

v.

A. E. SULLIVAN et al., Appellees.

No. 16252.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 17, 1961.

Rehearing Denied Jan. 5, 1962.

Lattimore & Lattimore, Morgan & Shropshire, and Cecil A. Morgan, Fort Worth, for appellants.

Walker, Day & Harris, and Joe Day, Jr., Fort Worth, for appellees.

BOYD, Justice.

Earnest O. Gillam individually and as trustee, his wife Merl Gillam, and Arthur P. Ticknor and wife, Jane Ticknor, appeal from a summary judgment rendered against them in their suit against A. E. Sullivan, J. C. Sullivan, Mrs. O. F. Sullivan, the executrix and beneficiary under the will of O. F. Sullivan, deceased, and Gillam Soaps & Chemicals, Inc. The suit was for rescission of contract on the grounds of failure of consideration, breach of contract, and fraud, and in the alternative for damages.

■ A motion for summary judgment filed by appellees, with many documents therein referred to attached, was overruled. After appellants had amended their petition, an unverified amended motion for summary judgment was filed by appellees, which was sustained, and which referred to the documents which had been attached to the original motion, but none was attached to the amended motion. Rule 166–A, Texas Rules of Civil Procedure, provides that affidavits may be filed supporting a motion for summary judgment, and that sworn or certified copies of all papers or parts thereof referred to in such affidavits shall be attached thereto or served therewith. Our Supreme Court, in Gardner v. Martin, Tex., 345 S.W.2d 274, held that such copies of documents must be attached or served when referred to in an unsworn motion, which has no supporting affidavit. In view of this holding, we do not consider the documents referred to in the amended motion, but rest our decision on appellants' pleading, the documents thereto attached and made parts thereof, the uncontradicted evidence adduced by depositions, and the admissions on file.

On June 29, 1953, appellants owned all of the capital stock of Gillam Soap Works, a Texas corporation, certain real estate in Fort Worth being among the assets of said corporation, said real estate having been theretofore conveyed to the corporation by appellants Gillam. On said date appellants sold all of the capital stock of Gillam Soap Works to Gillam Soaps & Chemicals, Inc., a Missouri corporation, for a consideration of $300,000.00, $125,000.00 of which was paid in cash, and the balance being evidenced by a note in the principal sum of §175,000.00, payable to E. O. Gillam in 120 equal monthly installments, and secured by a deed of trust on said real property in Forth Worth. Interest at five per cent was payable annually.

On July 1, 1953, Gillam Soap Works sold all of its assets, including said real estate, to the Missouri corporation, Gillam Soaps & Chemicals, Inc., and on the same day Gillam Soap Works was dissolved. At that time the only interest any of the appellants had in said assets was that they were mortgaged to secure the note to E. O. Gillam for $175,000.00. None of the appellants has ever owned any of the capital stock of the Missouri corporation, and none has ever been an officer or a director of that concern.

On February 9, 1956, Gillam Soaps & Chemicals, Inc., the Missouri corporation, referred to therein as "Soap Works," and appellant E. O. Gillam, as trustee, executed a written contract providing in substance: Soap Works agreed as of that date to transfer and assign all of the Texas assets of the company to the trustee; to execute all necessary papers to carry the assignment into execution; that any conveyance of the fixed assets would be made subject to the note held by Gillam; Gillam, as trustee, agreed to assume current liabilities not to exceed $40,000.00; it was agreed that "Gillam and his associates shall have the right * * * to organize a new corporation. * * * if they desire to retain and use the name Gillam Soaps & Chemicals, Inc.

in Texas they shall have the right to do so. * * * Both parties understand that E. O. Gillam in signing this contract is acting strictly in the capacity as Trustee. That in the event an assignment should be made by him to a corporation, a partnership or any other group that said assignee will assume and agree to pay all obligations herein imposed upon Gillam as Trustee."

On February 14, 1956, E. O. Gillam, as trustee, entered into a written contract with Ticknor, A. E. Sullivan, J. C. Sullivan, and O. F. Sullivan, therein referred to as "purchasers", which provided in substance as follows: The trustee agreed to assign to the purchasers the contract of February 9, 1956, made by him and the Missouri corporation; purchasers were to repay to trustee $10,000.00 already advanced by him to said corporation and $20,000.00 to be advanced by him; while the $30,000.00 was being repaid, trustee was to forego the principal payments on the debt owing to E. O. Gillam as part of the purchase price of Gillam Soap Works; Gillam would operate the business in his capacity as trustee until the purchasers should organize a new corporation, elect officers, and were prepared to function as a legal entity; the purchasers agreed to accept the contract of February 9, 1956, and to assume all liabilities thereunder; to repay the trustee the said $30,000.00; to organize a Texas corporation to engage in the soap business and take over and operate the plant known as Gillam Soaps & Chemicals, Inc., the stock to be owned equally by the four purchasers; to assume and pay off the balance of $129,500.00 on the purchase money note executed by the Missouri corporation to Gillam; to retain Ticknor at his present salary of $15,000.00 per year until said note was reduced to $87,500.00; to pay no dividends or bonuses until such debt reduction was made; to make no major change in the policies of the company without the advice and consent of the trustee; and that on failure to carry out any of such stipulations the agreement shall terminate and the

rights of the purchasers thereunder will cease.

Said purchasers organized Gillam Soaps & Chemicals, Inc., a Texas corporation; and on May 1, 1956, a written operating contract was executed by E. O. Gillam, therein referred to as general manager and trustee, and the Texas corporation and the said four purchasers, referred to as officers, directors and stockholders. By the terms of this contract, Gillam was employed as general manager and trustee; the corporation assumed the original note to Gillam; also, agreed to repay the $30,000.00 advanced by Gillam; Gillam was to continue as general manager and trustee until (a) the $30,000.00 and interest shall be paid; and (b) until the original $175,000.00 note shall have been reduced to $87,500.00, "at which time this Contract shall terminate, unless by mutual consent of the parties the same shall continue thereafter"; should Gillam become unable to serve as general manager before the note is reduced to $87,500.00, Ticknor would serve as general manager with the same authority and duties as the contract imposed on Gillam, until the Gillam note is reduced to $87,500.00; while Gillam or Ticknor is so serving, the general manager shall have authority to issue checks on the bank account of the corporation, to be countersigned by A. E. or O. F. Sullivan, which arrangement concerning the issuance and countersigning of checks shall remain in effect until the note is reduced to $87,500.00; no officer or stockholder, except Ticknor, should draw any salary until said note was reduced to $87,500.00; Ticknor and the Sullivans agreed that all of the stock of the corporation was to be placed in escrow until the note should be reduced to $87,500.00; should such debt reduction not be made, the stock was to be delivered to E. O. Gillam; but if the note should be paid down as so provided, the stock should be returned to the stockholders; the Sullivans agreed to buy through their company, Nu Way Products Company, a certain minimum amount of the products of Gillam Soaps & Chemicals,

Inc., and a violation of that promise would forfeit all of their stock, and in such event the stock would be delivered to Gillam.

A deed from the Missouri corporation, dated January 27, 1958, conveyed the Texas assets to the Texas corporation, Gillam Soaps & Chemicals, Inc.

In their brief appellants say that the Missouri corporation contracted to reconvey the "soap factory" to E. O. Gillam; in their petition they alleged that said corporation "returned" the Texas properties to Gillam as trustee, and that the corporation agreed that "all of the title" would pass into Gillam subject to performance of agreements in the instrument of February 9, 1956. It was further alleged that Ticknor was to have a salary of $15,000.00 per year for the balance of his life, and that he had been discharged after his salary had been lowered; and that the Sullivans had no intention of keeping and abiding by their agreements, but from the inception of their dealings the Sullivans were engaged in a scheme and plan to defraud Gillam and his son-in-law Ticknor out of stock and management and income and assets of the company.

We think that E. O. Gillam, under the contract of February 9, 1956, made with the Missouri corporation, held the property not individually but as trustee. Hager v. Stakes, 116 Tex. 453, 294 S.W. 835; Forman v. Glasgow, Tex.Civ.App., 219 S.W.2d 845; Estes v. Estes, Tex.Com. App., 267 S.W. 709; 42 Tex.Jur., p. 629, sec. 28. As trustee, Gillam had the right to transfer and assign the property. He did so transfer and assign it. Certain rights were retained until his $30,000.00 was repaid and the balance of the $175,000.00 debt was reduced to $87,500.00. The right was retained for Ticknor to receive a salary of $15,000.00 per year until the $175,-000.00 debt was reduced to $87,500.00. He was so paid. About July 10, 1957, the balance of the $175,000.00 debt was reduced, without any delinquencies, to $87,500.00. The $30,000.00, which had been advanced by E. O. Gillam, was duly paid. When the latter debt was paid and the former so reduced, the contractual arrangements terminated. There was neither allegation nor offer of proof that the contracts were extended by the parties, nor that they had been violated before their termination. There was uncontradicted testimony by deposition that the matter of extending Ticknor's employment was never mentioned. We think that appellants' allegations, with the three contracts attached and made parts thereof, along with the undisputed testimony of witnesses introduced by way of depositions, and appellants' admissions on file, show that there was no issue of material fact.

The judgment is affirmed.