# JANUARY, 1940

THOMAS O'CONNOR ET AL V. QUINTANA PETROLEUM COMPANY ET AL.

No. 7634. Decided November 22, 1939.
Rehearing overruled January 3, 1940.
(133 S. W., 2d Series 112, 134 S. W., 2d Series, 1016.)

*Crain, Vandenberge & Stofer,* of Victoria, for plaintiff in error Thomas O'Connor, *Gerald C. Mann,* Attorney General, *A. S. Rollins* and *Geo. W. Barcus,* Assistant Attorney General, and *Hobart Huson,* of Refugio, for the State.

When the mineral estate has been severed by a deed of conveyance, it thereby becomes taxable property as such, separate and distinct from the surface rights or ownership in the land,

and since O'Connor sold to, and the Quintana Petroleum Company purchased, the 7/8 mineral interest in the land in controversy, it is liable for the ad valorem taxes on the entire 7/8 mineral estate. Bracken v. Van Zandt County, 74 S. W. (2d) 540; Hager v. Stakes, 116 Texas 453, 294 S. W. 835; Eustis v. City of Henrietta, 90 Texas 468, 39 S. W. 567.

*Harry Holmes,* of Houston, for defendant in error Quintana Petroleum Company, and *K. W. Gilmore,* of Houston, for defendant in error Humble Oil & Refining Company.

*Sanders & Scott,* of Amarillo, filed argument as amicus curiae.

MR. JUDGE SMEDLEY of the Commission of Appeals delivered the opinion for the Court.

The State of Texas filed this suit against plaintiff in error Thomas O'Connor in Refugio County for the recovery of state and county ad valorem taxes, together with interest and penalties, due for the year 1936 on account of his alleged ownership of an interest in the oil, gas and other minerals in 4000 acres of land in Refugio County and for foreclosure of lien. The petition describes the property as being a mineral interest reserved by O'Connor in an oil and gas lease of said land executed by him to Quintana Petroleum Company on January 19, 1934, and sets out the paragraph in the lease reserving the said interest, which is as follows:

"In addition to the foregoing reserved interests, (the usual one-eighth royalties) there is furthermore reserved to the grantor one-fourth (1/4) of the remainder of any oil, gas or minerals produced from said land after the reservations above set forth are made, until the proceeds of the sale (such sale to be made at not less than the market price) by grantor of said one-fourth of the remainder shall aggregate Two Million Dollars ($2,000,000.00) whereupon this reservation of title to said 1/4 interest shall terminate and this interest shall vest in grantee and its assigns."

The interest described in the quoted paragraph is generally referred to in the petition and in the briefs as being a 7/32 (1/4 of 7/8) interest in the minerals in the 4000 acres of land. The petition alleges that the said interest was owned by O'Connor on January 1, 1936, that it was duly and legally assessed to him for ad valorem taxes for said year at a valuation of

five hundred thousand dollars and the taxes lawfully levied and that O'Connor became personally liable and obligated to pay the taxes on said interest with penalties and interest. Quintana Petroleum Company and Humble Oil & Refining Company, the owners of the leasehold estate, were made parties defendant, and the petition alleges that if plaintiff is mistaken as to said O'Connor having been the owner of said reserved interest on January 1, 1936, and it is held that the title thereto was owned on said date by Quintana Petroleum Company and Humble Oil & Refining Company, nevertheless the taxes assessed against the said interest, together with penalties, interests and costs, are due and collectible and are a charge upon and secured by a paramount and superior lien upon the said mineral interest. The prayer is that the State have judgment against O'Connor for the taxes, penalties, interest and costs, with foreclosure of lien, and in the alternative in the event the court should hold that O'Connor was not the owner of the mineral interest and is not personally liable for the taxes, that the court determine the amounts which the plaintiff is entitled to recover and that it have judgment against all the defendants fixing and foreclosing its lien on the said interest.

The trial court sustained O'Connor's general demurrer to the State's petition, holding that the petition, specially pleading the lease contract, affirmatively disclosed that O'Connor owned no taxable interest in the 7/32 interest in the minerals reserved in the lease. The case as between the State as plaintiff and Quintana Petroleum Company and Humble Oil & Refining Company as defendants was tried on an agreed statement of facts and judgment was rendered in favor of the State in accordance with the alternative prayer in the petition.

The Court of Civil Appeals in its first decision of the case held that Quintana Petroleum Company and Humble Oil & Refining Company are the owners of the 7/32 interest in the minerals as a part of the leasehold estate and affirmed the judgment of the trial court. On rehearing, however, it held that O'Connor is the owner of the said mineral interest, reversed the trial court's judgment, rendered judgment in favor of Quintana Petroleum Company and Humble Oil & Refining Company, and remanded the cause as between the State and O'Connor. 127 S. W. (2d) 354.

Both plaintiffs in error O'Connor and the State, in their applications for writs of error, take the position that ownership of the 7/32 interest in the minerals passed in the execution

of the lease to the lessee and that the paragraph in the lease, by which O'Connor as lessor reserved 7/32 of the oil, gas and other minerals produced from the land until the proceeds of the sale thereof by him should aggregate two million dollars, had the effect of reserving the title or interest in the minerals only by way of security for the payment of the said sum. The State's application for writ of error presents the theory that O'Connor reserved a right to receive oil, gas or other minerals of the value of two million dollars out of the 7/32 interest and that such right is distinct and apart from the ownership of the 7/32 which forms a part of the lessee's 7/8, the working interest, while in a supplemental brief filed in behalf of the State it is contended that the lessor O'Connor sold and conveyed 7/8 of the mineral estate to the lessee and retained a lien on 1/4 of the 7/8 to secure the payment of two million dollars out of the proceeds received from the sale of the minerals as produced.

The question presented for decision is: Does the reservation to the lessor of 7/32 of any oil, gas or other minerals produced from the land, until the proceeds of sale by the lessor of said 7/32 shall aggregate two million dollars, constitute an interest in land taxable as such against the lessor as its owner?

The question stated is to be answered, and the sufficiency of the petition on general demurrer is to be determined, by examination and construction of the lease, which is set out in full in the petition. The petition contains allegations, in addition to those hereinbefore copied and stated, sufficient at least against general demurrer, showing that the mineral interest under consideration was subject to ad valorem taxation in Refugio County for the year 1936, that the same was not rendered to the assessor by O'Connor or by any of the other defendants, that it was duly and legally rendered by the tax assessor and assessed to O'Connor for ad valorem taxes for said year at a valuation of five hundred thousand dollars, and that the taxes thereon in the amounts set out in the petition were lawfully and regularly levied and are past due and unpaid. The petition further alleges that a short time after the execution of the lease the lessee Quintana Petroleum Company and Humble Oil & Refining Company, to which an interest in the leasehold was conveyed, entered upon the land and drilled a great number of producing oil wells thereon which have continued to produce oil in paying quantities, and that the lessor O'Connor from the proceeds of the sales of the 7/32 interest

in the oil produced had received on January 1, 1936 only a small part of the two million dollars specified in the lease.

The lease, which designates the lessor as grantor and the lessee as grantee, does not purport to convey to the lessee 7/8 of the oil, gas and other minerals. It grants and leases the land to the lessee for the purpose of drilling, mining and producing oil, gas and other minerals, with the added provision that in case of any discovery of any of such products "there is expressly reserved to grantor certain interests therein hereinafter set forth, full title to such reserved interests being retained by the grantor." It is provided that in the event of discovery and production of oil in paying quantities in any well the lease shall continue in effect so long as gas, oil or other minerals are produced and marketed in paying quantities.

Section VI of the lease contains the reservation of interests to the lessor in the following language:

"In case of discovery and production by grantee of any oil, gas or other minerals upon and from the leased premises, interests in all of such products and full title thereto are retained by grantor as follows:

"(a) One-eighth (1/8) of all oil produced and saved from said land as long as any production is maintained; provided, however, that as to any unmerchantable oil derived from the wells, containing more than two per cent B. S. and water, such one-eighth shall bear its proportionate expense of treating such unmerchantable oil to make it merchantable as crude.

"(b) One-eighth (1/8) of the gas produced from the land and sold or used off the land, or in manufacturing gasoline, including casing head gas or other gaseous substances.

"(c) One-eighth (1/8) of all other minerals mined and marketed, except should sulphur be produced, then grantee may buy grantor's interest, paying therefor at the rate of One Dollar per long ton.

"(d) In addition to the foregoing reserved interests, there is furthermore reserved to grantor one-fourth (1/4) of the remainder of any oil, gas or minerals produced from said land after the reservations above set forth are made, until the proceeds of the sale (such sale to be at not less than the market price) by grantor of said one-fourth of the remainder shall aggregate Two Million ($2,000,000.00) Dollars, whereupon this reservation of title to said 1/4 interest shall terminate, and this interest shall vest in grantee and its assigns.

"All gas or oil to which grantor is entitled under this contract shall be delivered to him at the wells into any pipe line to

which producing wells may be connected, and his interest in any other minerals produced shall be delivered to him at the wells or mines. Grantee is hereby given the option of purchasing at the wells or mines all or any part of grantor's reserved rights in such products by paying the market price therefor at the wells on the day it is run into the pipe line or storage tanks.

"Accountings to grantor for all his reserved interest in products shall be made to him at Victoria, Texas, on or before the 20th day of each month for the preceding calendar month, and all payments due grantor then and there made."

■ We have reached the conclusion after careful consideration that the 7/32 interest reserved to the lessor O'Connor by subdivision (d) of Section VI above set out is an interest in land taxable as such against O'Connor as its owner. The lease, as has been stated, does not purport to convey, and it does not presently convey, to the lessee 7/8 of the minerals in the land. It grants and leases the land to him with provision that the certain interests in the minerals thereinafter set forth are expressly reserved to the grantee, "full title to such reserved interests being retained by grantor." Such interests so reserved are described in Section VI of the lease and are 1/8 of all oil produced and saved, 1/8 of the gas produced and sold or used off the land or in manufacturing gasoline, 1/8 of all other minerals mined and marketed, except sulphur, and, in addition to the said reservations, the further reservation of 7/32 of the oil, gas or other minerals produced from the land until the proceeds of sale thereof by the grantor shall aggregate two million dollars. Thus the particular interest under consideration is reserved to the lessor by the same language as that used in the reservation of the 1/8 royalties. This reservation is as full, complete and unconditional as the others, with the single limitation that it shall remain in effect only until the stated amount has been realized by the lessor from proceeds of sales made by him, whereupon the said reservation shall terminate and the interest shall vest in the lessee and its assigns. Under this reservation, as under the reservation of the 1/8, the oil or gas to which the lessor is entitled is to be delivered to him at the wells into the pipe line as it is produced, free of charges or expenses of production or operation. Thus the lessor during the life of this reserved interest has the unqualified right to a part of all minerals that may be produced and taken from the land. Such right or interest may or may not continue in effect during the entire life of the lease, its duration depending

upon the amount produced, the rate of production and the market value of the minerals.

It is not necessary for decision of the question under consideration to hold that the lessor is by reason of the reservation of the 7/32 interest the owner, subject to limitation, of 7/32 of the minerals in place, that is, that he reserved or excepted a possessory or corporeal estate in a portion of the minerals. The reserved right is at least an incorporeal or non-possessory interest and comes within the definition of real property for the purpose of taxation given in Article 7146 of the Revised Civil Statutes of 1925 as follows:

"Real property, for the purpose of taxation, shall be construed to include the land itself, whether laid out in town lots or otherwise, and all buildings, structures and improvements, or other fixtures of whatsoever kind thereon, and all the rights and privileges belonging or in any wise appertaining thereto, and all mines, minerals, quarries and fossils in and under the same."

See: Sheffield v. Hogg, 124 Texas 290, 310, 77 S. W. (2d) 1021, 80 S. W. (2d) 741; Evans v. Ropte, 128 Texas 75, 79, 96 S. W. (2d) 973; Bracken v. Van Zandt County, 74 S. W. (2d) 540, (application for writ of error refused); Summers Oil & Gas (Permanent Edition) Vol. 3, Sec. 583, pp. 388-389.

The conclusion which we have expressed as to the nature of the reserved interest is supported by decisions, holding that similar interests reserved in the execution of mineral leases or conveyed out of leasehold estates are interests in land. In Sheffield v. Hogg, supra, it was held that oil and gas royalty interest, whether the royalties are payable in oil or in kind, are present interests in land rather than mere rights in personalty. The 7/32 interest reserved in the lease executed by O'Connor is not different in nature from the ordinary 1/8 royalty interest. The only difference is that it may not endure for as long a period as does the royalty reserved without limitation. Associate Justice Greenwood's opinion in the Hogg-Sheffield case does make mention of the fact that the ordinary 1/8 royalty continues throughout the duration of the leasehold estate, a determinable fee, which may be perpetual, and is therefore a fee simple interest in land. The opinion, however, contains nothing to suggest that a royalty interest, subject to a limitation which may cause it to terminate before the expiration of the leasehold estate, is not an interest in land. The case holds that the 1/8 oil and gas royalties usually reserved

in leases are interests in land, because they are profits arising out of land and further because such classification, which accords with the practice in the oil and gas industry furnishes a stability highly important, if not essential, to the structure of that business.

In Tennant v. Dunn, 130 Texas 285, 110 S. W. (2d) 53, it was held that a conveyance by the owner of an oil and gas lease of his interest in the lease in so far as it covered $25,000.00 worth of oil out of 5/48 of 7/8 of the oil produced from a well on the leased land invested the grantee with title to an interest in land. The contention that the instrument evidenced merely an obligation to pay $25,000.00 out of the proceeds of the oil was rejected. This for the reason that the conveyance gave a grantee the absolute right, without charges for production or operation, to a fractional part of the oil as and when produced from a well on the leased land until the grantee should have received oil of the total value of $25,000.00. The interest involved in that case is of the same character as that under consideration in the instant case. The two differ only in source, the one arising from a conveyance out of the leasehold estate and the other from reservation or exception by the lessor in the execution of the lease. See also Thomas v. Perkins, 301 U. S. 655, 81 L. Ed. 1324.

This court by its refusal of application for writ of error evidenced its approval both of the judgment and of the determination of the principles of law declared in the opinion of the Court of Civil Appeals in Sheppard v. Stanolind Oil & Gas Co., 125 S. W. (2d) 643. That was a suit by the Stanolind Company against the State for the recovery of oil production taxes paid under protest, the controlling question being whether the State, as to sums due it under a clause in leases from the State to Stanolind Company, providing for payment of a stated sum out of 1/6 of 5/6 of the first oil and gas produced, was an interested party within the meaning of Subdivision 6 of Section 2 of Chapter 162, Acts Regular Session of the 43rd Legislature, (1933). That subdivision provided that the tax levied should be borne ratably by all interested parties, including royalty interests. The court, after careful discussion of the nature of the right or interest reserved by the State, under which it was entitled to the payment of a stated sum out of a fractional part of oil and gas produced, held that "the interest here involved, by whatever name it may properly be called, is an interest in real estate, an interest in production under the leases, and such an interest as imposes upon its owner the burden of the

production tax under the statute we are considering." In demonstrating that such reserved right to payment out of production is essentially the same as the royalty ordinarily reserved, Chief Justice McClendon, writing the opinion in that case, said:

"Inherently, therefore, these sums possess every characteristic of the royalty payments, save only that the former are limited to the quantity of oil actually produced up to the amount equal in value to the stated sums. Both are conditional absolutely upon the fact of production, and both are limited to the amount of production; the former continuing so long as there is production, the latter ceasing when the production reaches the stated amount. For all practical purposes, and viewed in the light of every practical consideration, the interest of the State in the production of 1/6 of 5/6 of the oil, up to the full amount of the stated sums, is essentially and actually in nowise different from its interest under its retained royalty."

■ We cannot give to the reservation the meaning that plaintiffs in error insist should be given it, that is, that it does not reserve an interest in land but amounts to nothing more than the reservation of title by way of security for the payment of $2,000,000 and that the lease should be construed as a conveyance of the entire 7/8 of the mineral estate to the lessee with reservation of a lien on 1/4 of the 7/8 to secure payment of the stated sum out of the proceeds of sale of the minerals. Such construction would disregard the intention of the parties as disclosed by the lease in unambiguous language. The lease does not purport to convey to the lessee 7/8 of the minerals. It grants and leases the land for the purpose of drilling for and producing minerals, carefully stating in this connection that there are expressly reserved, however, to the grantor certain interests in the minerals that may be produced, full title thereto being retained by the grantor. In the same plain and positive language, when the reserved interests are described in detail in paragraph VI of the lease, the full title thereto is retained by the lessor. The same paragraph requires that the gas or oil to which the lessor is entitled under the reservation shall be delivered to him as it is produced. The reservation is unlike the vendor's lien for two reasons, first, because no lien is retained on any part of what is conveyed to the lessee— the 7/32 is not conveyed, and second, because no obligation is imposed upon the lessee to pay the $2,000,000—the lessor obtains payment only out of a part of the oil if and when produced. It is our opinion, stated in expressive terms taken from the opinion in Sheppard v. Stanolind Oil & Gas Company,

supra, that under the reservation of the 7/32 of the minerals produced from the land the lessor has a "direct or immediate interest" in the minerals actually produced as distinguished from the interest of a lienor which is "collateral as security for a personal obligation of absolute liability."

Plaintiffs in error express apprehension that part of the mineral interest in the land will escape taxation unless the 7/32 interest is assessed against defendants in error as a portion of the leasehold estate. They argue that if the 7/32 interest in assessed against O'Connor it can never be valued for taxation at a sum in excess of the remainder of the two million dollars yet to be realized out of the proceeds of the sale of the 7/32 of the minerals, that when most of the two million dollars shall have been realized by the lessor all the remaining value will then have inured to the benefit of the two oil companies, the owners of the lease, and that however enormous the taxable value might then be they would not be liable for taxes on any part of the 7/32. The apprehension and the argument arise out of and proceed from the erroneous assumption that in order to reach the value of 7/32 of the minerals for taxation all of such fractional interest, as if it were owned without limitation, must be assessed either as the property of the lessor or as the property of the lessee.

It is provided in substance by Article 7174, Revived Civil Statutes of 1925, that real property, or an interest in real property, shall be value for taxation at what it is fairly worth in money or at such price as it would bring at a fair voluntary sale for cash. It is apparent that, where there is substantial production, as here, the right to a part of the minerals as they are produced, subject to the limitation that the right ceases when a certain sum has been realized from the proceeds thereof, is not of as great value as would be the right to an equal part of the minerals not subject to limitation; and it is further apparent that the value of the lessor's right or interest so limited, assuming continued production, will decrease each year. These facts must be taken into consideration in valuing such interest for taxation. Likewise it is apparent that the leasehold estate under this lease has a greater value on account of the limitation imposed upon the reserved 7/32 interest, with the provision that upon the termination of title under the reservation the 7/32 shall vest in the lessee, than it would have if the 7/32 interest had been reserved without limitation; and it is further apparent, still assuming continued production, that the leasehold estate will become more valuable each year

as the time approaches when the 7/32 interest will vest in the lessee. And these facts must be taken into consideration in valuing the leasehold estate for taxation. When this method of valuing the property is used no part of the 7/32 of the minerals escape taxation. Its value for taxation is represented by the valuation placed upon the lessor's reserved and limited 7/32 interest, together with the increased valuation placed upon the leasehold estate by reason of the limitation and the provision for the vesting of the interest in the lessee upon the satisfaction of the limitation.

The record discloses that when rendering the leasehold estate in the four thousand acres for taxation for 1936, Quintana Petroleum Company in its written rendition, after the description of the land, thus described the leasehold estate: "The above being the leasehold estate covering 20/32 of minerals." This rendition seems to indicate that the taxpayer voluntarily undertook to exclude from its rendition both the 1/8 royalty interest and the 7/32 of the minerals as if the 7/32 interest, like the 1/8 royalty interest, were owned by the lessor without the limitation and without the provision for the vesting of the 7/32 in the lessee upon the satisfaction of the limitation (Quintana Petroleum Company had theretofore assigned interests aggregating 1/32 out of its leasehold estate). The owner of the leasehold estate has not only the right to take and dispose of 20/32 of the minerals, but he is at the same time and presently the owner of the additional right to have, take and dispose of 7/32 of the minerals upon termination of the lessor's right thereto under the reservation. Such additional right, even though it may be, as we believe it is, an integral part of the lessee's property, may not escape taxation by the taxpayer's voluntary exclusion thereof from his rendition sheet. Victory v. Hinson, 129 Texas 30, 102 S. W. (2d) 194. If such additional right was in fact excluded by the lessee in making its rendition, it may be assessed for taxation at its fair value in the manner provided by the statutes.

The Court of Civil Appeals correctly rendered judgment in favor of defendants in error Quintana Petroleum Company and Humble Oil & Refining Company, as the State in its suit sought judgment against them for foreclosure of lien only in the event it should be held that the 7/32 interest reserved in the lease was not owned by the lessor O'Connor on January 1, 1936, but by the said defendants in error. The judgment of that court was correct also in its remanding the cause to the district court for trial as between the State and O'Connor, on

account of the trial court's error in sustaining O'Connor's general demurrer to the State's petition.

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court November 22, 1939.

### ON MOTION FOR REHEARING.

In motion for rehearing filed in behalf of the State of Texas by the Attorney General it is argued that the judgment rendered herein, affirming the judgment of the Court of Civil Appeals, is inconsistent with what is said in the opinion filed herein on November 22, 1939, as to the nature of the interests granted to the lessee and reserved by the lessor and the method of assessing and valuing such interests for taxation. This argument seems to grow out of a construction placed by the State's Attorney upon the opinion of the Court of Civil Appeals and the assumption that affirmance by the Supreme Court of the judgment of the Court of Civil Appeals amounts to an approval of what is said in the opinion of that court.

To prevent misconception of the effect or meaning of the affirmance of the judgment rendered by the Court of Civil Appeals and without intimating that the construction placed on the opinion of that court in said motion for rehearing is either correct or incorrect, we deem it sufficient to say that the affirmance of the judgment of the Court of Civil Appeals was not intended as an approval of the opinion of the Court of Civil Appeals as that opinion is construed in the said motion for rehearing, but the said judgment was affirmed for the reasons stated and on the conclusions expressed in the opinion filed herein on November 22, 1939. With this explanation, the said motion for rehearing is overruled.

Opinion adopted by the Supreme Court January 3, 1940.