In the Matter of the Estate of MARIE R. JENNEY, Deceased.

Surrogate's Court, New York County, June 28, 1948.

*Hamilton McInnes* for State Tax Commission, appellant.

*McLean, Ferris, Ely & Fain* (*Hawkins, Delafield & Wood*; of counsel), for Gilbert B. Ferris and another, as administrators *c. t. a.* of Marie R. Jenney, deceased, respondents.

DELEHANTY, S. On September 30, 1947, an order was made fixing the estate tax on the basis of the appraiser's report. From that order the State Tax Commission appeals on the ground that the appraiser erroneously excluded from the gross tax estate of deceased the value of certain rights of deceased derived from the terms of a deed to land in Texas. A second ground of appeal was specified but has now been abandoned and the only question presented has to do with the nature of the property right under the deed to Texas property.

Deceased's rights stem from the will of her mother, Mary I. Jenney, who with others made conveyance to an oil company of certain land in Texas by deeds which described the property and the nature of the grant and then continued:

" It is expressly understood that this deed is absolute and without condition of any kind or character, and that Grantee, its successors or assigns, shall never be required nor under any obligation or covenant, either expressed or implied, to drill or operate on said lands or any part thereof for the discovery of [*sic*] production of oil or gas or other minerals; and that if Grantee should elect to drill on said land and discover oil, gas or other minerals, the further development of said lands shall be wholly at Grantee's option and determination, and no expressed or implied obligation [*sic*] are imposed on Grantee to develop said premises for oil, gas or other minerals either before or after discovery thereof; and that Grantee shall have the right to abandon any wells and cease operations or development at any time.

" However, in the event Grantee, its successors or assigns, shall at any time discover, produce and save oil, gas and other minerals, or either of them, on said land in paying quantities, then and in such event Grantee binds itself, its successors, and assigns, to pay unto Grantors, their heirs, executors, administrators or assigns, monthly if, when and as such oil, gas or other minerals shall be produced and saved, without cost or expense to Grantors, the following bonus, to-wit:

"(a) The value, in money, at the well or wells on the days produced, of one-eighth (⅛) of the oil produced and saved from all wells on said land;

"(b) The value, in money, at the well or wells, of one-eighth (⅛) of the gas produced from said wells, provided such gas shall be sold or manufactured by Grantee or used by Grantee off the premises. (The term ' gas ' as used herein shall include casinghead gas, bradenhead gas and other gaseous substances,) ;

"(c) The value, in money, at the well or mines, of one-eighth (⅛) of all other minerals (excepting oil and gas) produced and saved from said lands by Grantee, provided however, that no bonus shall be payable to Grantors on any oil or gas used by Grantee for lights, heat or fuel in its operations on said lands; and provided further that no change in ownership of said bonus and bonus rights shall be binding on Grantee until it shall be furnished with the original legal transfers or other documents or certified copies therof by which such change of ownership was effected.

" The above bonus agreement shall run with the land and Grantee guarantees that if it sells, assigns or leases the above premises, or any of them in case of production as herein

provided the Grantee, assignee or lessee will perform said bonus agreement.''

If the interest thus described is personalty it is taxable here by the State of New York. If realty, it may not be taxed since the realty has its situs in Texas. The deed deals with Texas realty so the Texas statutes and the decisions of the Texas courts are deemed by this court to be controlling on the construction of the instruments through which the rights of deceased accrued.

The Texas statute in effect at the time of the deeds by deceased's mother is quoted in *Sheffield* v. *Hogg* (124 Tex. 290, 309–310) thus: '' Real property, for the purpose of taxation, shall be construed to include the land itself, whether laid out in town lots or otherwise, and all buildings, structures and improvements, or other fixtures of whatsoever kind thereon, and all the rights and privileges belonging or in any wise appertaining thereto, and all mines, minerals, quarries and fossils in and under the same.'' In the cited case the contract of sale and lease under consideration provided for royalties of one eighth of oil and gas, for payment '' at the end of each month, or whenever second party shall receive pay therefor,'' and provided further that the grantors should have '' one-eighth interest in all money realized from gas marketed from said land as a royalty to be paid over to them, or their order, at the end of each month, or whenever second party shall receive pay therefor.'' The contract there under consideration also provided for a fixed payment of $1 per long ton for sulphur produced from the land. The cited case held that such provisions constituted for tax purposes an interest in the land. This case has consistently been followed by the later Texas cases and must now be regarded as stating the settled law of Texas.

The precise terms of instruments construed in the Texas cases are varied, but in effect the cases say that whatever is derived in kind or in money value from the minerals underlying realty is to be taxed as realty and is to be governed by the law of real estate (*Sheppard* v. *Stanolind Oil & Gas Co.*, 125 S. W. 2d 643 [Tex.]; *O'Connor* v. *Quintana Petroleum Co.*, 134 Tex. 179, motion for rehearing overruled, 134 Tex. 191; *Sheffield* v. *Hogg, supra; State Nat. Bank* v. *Morgan*, 135 Tex. 509).

The rights under the deeds here under consideration '' run with the land ''. Such a covenant confirms that the rights of

deceased are rights in realty and so requires the holding that the State of New York is without power to impose estate taxes thereon.

For these reasons, the appraiser correctly excluded the value of the rights in computing the taxable estate. The appeal of the State Tax Commission is overruled.

Submit, on notice, order accordingly.