**WHITTENBURG et al. v. STATE et al.**

No. 6308.

Court of Civil Appeals of Texas.
Amarillo.

May 18, 1953.

Rehearing Denied June 15, 1953.

and for the use and benefit of all political subdivisions whose taxes are collected by the assessor and Collector of Taxes for Yoakum County, against J. A. Whittenburg, Jr., and Roy R. Whittenburg, as trustees of the J. A. Whittenburg estate; J. A. Hedgecoke; R. G. Windsor and J. A. Whittenburg, Jr., as executors and trustees of the Nannie Mae Windsor estate; B. E. Walker, as guardian of the estate of Jake Whittenburg, non compos; and Lillie Frances Ratliff and husband, H. L. Ratliff; Annie W. Walker and husband, B. E. Walker; J. A. Whittenburg, Jr.; R. G. Windsor; Georgia Whittenburg Hawks and husband, A. W. Hawks; Roy R. Whittenburg; Mattie Pearl Morris and husband, W. Glynn Morris; Joe D. Whittenburg; S. B. Whittenburg; Bonnie W. Liston and husband, Jack D. Liston; Helen Whittenburg McCartt and husband, E. J. McCartt, Jr.; Tennessee Whittenburg Cline and husband, R. C. Cline; Sidney Atkinson and husband, H. F. Atkinson; Jewel H. Lankford and husband, Jack B. Lankford; Nona T. Mills and husband, R. D. Mills; Garland H. King and husband, Paul King and Dixie Hedgecoke Shannon and husband, Harry F. Shannon, for the recovery of delinquent taxes for the years 1942 to 1949 both inclusive, together with all penalties, interests, costs, and other charges and expenses on account of their alleged ownership of an interest in the oil, gas, and other minerals in three sections of land situated in Yoakum County, Texas.

The petition described the property sought to be taxed as being a mineral interest reserved by the defendants in two oil and gas leases executed by the defendants to the Denver Producing and Refining Company on July 20, 1937, and to designate the property sought to be taxed pleaded as follows:

"Said lease provided for the usual 1/8th part of all oil produced and saved from the premises and one-eighth of the gas sold or used, as royalties to the lessors in such lease, and in addition, said lease provided that as further consideration moving to lessors and an inducement for the execution of such lease, an additional one-fourth of the

Sanders, Scott, Saunders & Smith, Amarillo (C. J. Humphrey, Amarillo, of counsel), Adkins, Folley, Adkins, McConnell & Hankins, all of Amarillo, for appellants.

Klett, Bean & Evans, Lubbock, Paul New, Denver City, for appellees.

NORTHCUTT, Justice.

This suit was brought by the State of Texas, in behalf of itself, Yoakum County,

minerals in said lease was· reserved to the lessors, their heirs, representatives and assigns, which additional one-fourth of the minerals should be produced by the lessee, its successors and assigns, free of cost and expense to lessors, their representatives and assigns, and delivered to the credit of lessors in the exact same manner as was provided for the delivery and credit of the one-eighth royalty in clauses four and five of such lease, until lessors, their heirs, representatives and assign should have received from the net proceeds derived from the sale of said additional one-fourth interest reserved, the sum of money equal to $1250.00 per acre, for each and every acre, in said lease, when the rights of the lessors to said additional one-fourth of the minerals should cease and terminate." :

There were two motions made by the defendants to dismiss plaintiffs' cause of action. J. A. Whittenburg, Jr. and Roy R. Whittenburg, as trustees of the J. A. Whittenburg estate, filed one of the motions to dismiss, for the reason that the attorneys representing the plaintiffs were not legally authorized and empowered to institute and prosecute the action as against them; that neither plaintiffs nor the purported attorneys had a right to seek personal judgment against the J. A. Whittenburg estate or these trustees without seeking to foreclose the alleged tax lien on the property on which plaintiffs' alleged delinquent taxes to be due and that the court did not have the necessary parties before it to foreclose said lien upon the property in question, and that they did not own the property in question and had never owned the interest in the proportion which the interest was valued.

Other defendants made a motion to dismiss plaintiffs' cause of action because there had ·never been an assessment by the State of Texas or by Yoakum County against these defendants; that the petition did not set-forth, or purport to set-forth, what amount of money was being sought to be recovered from each of said defendants; that none of the defendants were the owners of the interest sued upon at the time this suit was filed, and that a purported assessment against George A. Whittenburg heirs would not support judgment against said defendants individually, nor did such suit give any basis for taking a personal judgment against said defendants individually and in their various capacities.

Both motions to dismiss were overruled by the court.

The case was tried to a jury. At the close of the evidence, both plaintiffs and defendants made a motion for an instructed verdict. The court granted plaintiffs' motion for an instructed verdict and overruled defendants' motion, and instructed the jury to render the following verdict:

"We, the jury, find for the plaintiff, State of Texas and others, and against the defendants, J. A. Whittenburg and others."

Upon this verdict the following judgment was rendered:

"On the 4th day of November, A. D., 1952, the above and entitled and numbered cause came on for hearing, and the plaintiff appeared by attorneys. The defendant, Roy R. Whittenburg, appeared in person and by attorneys, and all other defendants appeared by attorney. A jury having been demanded, thereupon came twelve good and lawful men, who were duly empaneled and sworn as jurors. The evidence was heard and at the conclusion of the evidence, the plaintiff moved for an instructed verdict and the defendants moved for an instructed verdict, and after considering same, on the 6th day of November, A. D., 1952, the Court instructed the jury to return a verdict in favor of the plaintiff, whereupon the jury returned into court the following verdict:

"We, the jury, find for the plaintiff, State of Texas and others, and against the defendants, J. A. Whittenburg and others."

Such verdict was duly signed by the foreman of the jury and was received by the Court.

"The Court finds that the defendants, except the husbands of the married women, are personally liable for the taxes sued for by the State of Texas by reason of their ownership of the oil payment upon which the taxes in controversy were assessed at the time such taxes accrued, except that the defendants, Sidney Atkinson, Nona T. Mills, Dixie Hedgecoke Shannon, Jewel H. Lankford, Garland H. King and J. A. Hedgecoke are the beneficiaries of the Mattie Hedgecoke Estate, which estate was the owner of the oil payment during the year 1948 during which the taxes in controversy, insofar as said estate is concerned, were assessed, and that such defendants received from the estate more than the amount of such taxes, and by reason of such facts such defendants are personally liable; and the Court further finds that the oil payment in question has paid out and therefore, there is nothing in existence upon which a lien can exist or can be foreclosed.

"It is therefore ordered, adjudged and decreed by the Court that the plaintiff, the State of Texas, for itself and in behalf of Yoakum County and the political subdivisions in said county in which the land, from which the oil payments in controversy were made, was situated and which taxes are collected by the assessor and collector of taxes for said county, do have and recover of and from the defendants as follows:

"1. The plaintiff shall recover of and from J. A. Whittenburg, Jr. and Roy R. Whittenburg, as trustees of the J. A. Whittenburg Estate, the sum of $20,229.70, being the taxes with accrued interest and costs due by such estate.

"2. That the plaintiff recover of and from R. G. Windsor and J. A. Whittenburg, Jr., as trustees and executors of the estate of Nannie Mae Windsor, deceased; B. E. Walker, as guardian of the estate of Jake Whittenburg, non compos; Lillie Frances Ratliff, whose husband is H. L. Ratliff; Annie W. Walker, whose husband is B. E. Walker; J. A. Whittenburg, Jr.; Georgia Whittenburg Hawks, whose husband is A. W. Hawks; Roy R. Whittenburg; Mattie Pearl Morris, whose husband is W. Glynn Morris; Joe D. Whittenburg; S. B. Whittenburg; Bonne W. Liston, whose husband is Jack D. Liston; Helen Whittenburg McCartt, whose husband is E. J. McCartt, Jr.; Tennessee Whittenburg Cline, whose husband is R. C. Cline, jointly and severally, the sum of $10,038.72, being the taxes, interest and costs assessed against the Geo. A. Whittenburg heirs; and

"3. That the plaintiff recover of J. A. Hedgecoke, Sidney Atkinson, whose husband is H. F. (Beck) Atkinson, Jewel R. Lankford, whose husband is Jack B. Lankford, Nona T. Mills, whose husband is R. D. Mills, Garland H. King, whose husband is A. P. (Paul) King, and Dixie Hedgecoke Shannon, whose husband is Harry F. Shannon, jointly and severally, the sum of $1428.80, being the taxes, interest and costs sued for and assessed against the Mattie Hedgecoke Estate.

"It is further ordered, adjudged and decreed by the court that the plaintiff recover of and from the above named defendants, against whom judgment is rendered, all costs in this behalf expended, and execution may issue to enforce this judgment.

"To which action and judgment of the court, the defendants then and there in open court excepted and gave notice of appeal.

"This judgment is ordered entered this the 25 day of November, A. D., 1952."

The Court instructed the jury to render a verdict for the plaintiffs and granted judgment for the plaintiffs, to which action of the Court defendants complained and perfected their appeal to this Court. We are of the opinion that the Court made a reversible error in so instructing the jury and rendering such judgment for the plaintiffs. We believe the case of Simkins v. City of Corsicana, Tex.

274

Civ.App., 86 S.W.2d 792, 793, gave the correct ruling on this point when it said:

"Since the trial court withdrew the case from the jury and gave an instructed verdict for the appellee, it becomes our duty, in passing on the correctness of such ruling, to consider the evidence in the light most favorable to appellant and to indulge every reasonable intendment fairly deducible from the evidence in her favor. If the evidence when so considered does not establish appellee's right to recover with such certainty that reasonable minds cannot differ as to the effect thereof, then it becomes our duty to reverse the judgment of the lower court and to remand the cause for a new trial."

3 Tex.Jr. 1049; Thomas v. Postal Telegraph-Cable Co., Tex.Com.App., 65 S.W.2d 282; Wininger v. Fort Worth & D. C. R. Co., 105 Tex. 56, 61, 143 S.W. 1150, par. 1; Guedry v. Jordan, Tex.Civ.App., 268 S.W. 191, par. 4; Bragg v. Houston Electric Co., Tex.Civ.App., 264 S.W. 245, par. 11; Charles v. El Paso Electric R. Co., Tex.Com.App., 254 S.W. 1094; Boone v. City of Stephenville, Tex.Civ.App., 37 S.W. 2d 842.

■ It is true that individuals should render their property for tax purposes and if the tax assessor is of the opinion that the property is not properly rendered as to value, he should place figures on the rendition, showing what he thinks the proper value. But, should the individual fail to render the property, then the tax assessor should assess the property for taxes. It is not the duty of the Board of Equalization to assess taxes, and no provision is made for them to do so. But the undisputed record in this case shows that the Board of Equalization of Yoakum County set the value of the property in question here, although it had never been assessed, and after the Board of Equalization had determined what that value was, then it was approved by the tax assessor of Yoakum County but was never assessed by the tax assessor and only approved by him after being valued or assessed by the Board of Equalization.

■ The property upon which it is alleged that the delinquent taxes are due is the ¼ of the minerals reserved as above set out until the proceeds from the sale of such ¼ of the products have amounted to $1250 per acre for each and every acre of said lease. This ¼ interest constitutes an interest in land taxable as such against the lessor as its owner, to the extent that he owns the same.

The Supreme Court in the case of Hager v. Stakes, 116 Tex. 453, 294 S.W. 835, 842, states:

"Real estate is ordinarily taxed as a unit; yet, where there have been severances by conveyance, exception, or reservation, so that one portion of the realty belongs to one person and other portions to others, each owner should pay taxes under proper assessment against him of the portion owned by him. The fact that a portion may consist of minerals or of a fractional interest therein makes no difference, as outlined in State v. Downman (Tex. Civ.App.) 134 S.W. [787] 795, and Downman v. Texas, 231 U.S. [353] 356, 357, 34 S.Ct. 62, 58 L.Ed. 264.

"* * * The Texas Constitution and statutes leave no room for doubt that all property of every kind is subject to taxation, and, as long as such property consists of minerals in place or fractions of same, the taxes should be assessed and collected thereunder as on any other species of real estate."

The Supreme Court held to same effect in Thompson v. Thompson, 149 Tex. 632, 236 S.W.2d 779, 784.

"In discussing the nature of a mineral royalty this Court said in the case of Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472, 476: 'We think it is settled by the decisions of this Court and of this State that a contract affecting land in this State, granting or reserving mineral royalty in such land, constitutes such royalty real property. Stated in another way, a contract affecting land in this State, which grants or reserves mineral royalty in such land, constitutes the owner of such

royalty the owner of an estate in such land. Sheffield v. Hogg (Federal Royalty. Co. v. State), 124 Tex. 290, 77 S.W.2d 1021, 80 S.W.2d 741; Sheppard v. Stanolind Oil & Gas Co., Tex. Civ.App., 125 S.W.2d 643, writ refused; W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27; State National Bank of Corpus Christi v. Morgan, 135 Tex. 509, 143 S.W.2d 757; O'Connor v. Quintana Petroleum Co., 134 Tex. 179, 191, 133 S.W.2d 112, 134 S.W.2d 1016 [128 A. L.R. 843]. It is also settled by our decisions that mineral royalty affecting land in this State, granted or reserved, "and however payable—whether in the specific product (in oil) or in money measured by the value of the product," is an interest in the land covered by the contract. Sheppard v. Stanolind Oil & Gas Co., supra, 125 S.W.2d 649; Sheffield v. Hogg (Federal Royalty Co. v. State), supra.' "

And Garza v. De Montalvo, 147 Tex. 525, 217 S.W.2d 988, 992.

"It is settled in this state that the interests retained by the landowner, under an oil and gas lease, including royalty, are interests in land. Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021; Tennant v. Dunn, 130 Tex. 285, 110 S.W.2d 53; State v. Quintana Petroleum Co., 134 Tex. 179, 133 S.W. 2d 112 [134 S.W.2d 1016], 128 A.L.R. 843; Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472. The language used in the partition agreement in several different ways expresses the parties' intention to effect a segregation of all interests in the land theretofore jointly owned by the parties. There is nothing to indicate that any exception was intended. The Garza plaintiffs, by joining in the partition agreement, expressly agreed that each of the Garza defendants should enjoy in severalty the land set apart to him and expressly relinquished to each Garza defendant all interests of every character theretofore owned or claimed by the Garza plaintiffs in such land. As a matter of law it must be concluded that the partition agreement was intended to segregate and did segregate the mineral interests of the parties, including both the possibilities of reverter and the royalty interests."

It is the contention of the defendants that they did not own the property that was taxed at the time of the filing of this suit and neither did they own all of it for the period of time the taxes became delinquent, and also that the taxes sued for are in excess of the limit allowed by law. We do not understand that it is the contention of appellants that the tax authorities discriminated between the values placed on their property and other property, but contended that the tax authorities erred in their division of the assessed value of the oil payment.

We are of the opinion that their contention is correct, and that the Court erred in instructing a verdict for the plaintiffs and in granting judgment for the plaintiffs.

The undisputed evidence in the case shows that, during the years of 1942 to 1946, the interest of appellants in the ¼ oil interest reserved was decreasing, yet their interest was valued at a higher value. On those same years, the reversion interest was valued each year at $500. It is undisputed that each year the interest of the lessee in the ¼ oil interest increased and the interest of appellants in the same ¼ oil interest decreased.

During the year 1946, although the appellants' interest in the property taxed amounted to .603% of its value and the remaining value .397% was owned by the lessee. The appellants' .603% interest was valued at $91,910, and the lessee's .397% interest was valued at $500.

The same condition exists on during the years from 1942 to 1949. In 1942 the lessee's interest in this property was shown to be .146%, and was valued at $500. In 1949 the appellants' interest in this same property was shown to be .087% and yet it was valued at $20,000. During these years appellants appeared before the Board of Equalization of Yoakum County and called to the Board's attention the above facts, and attempted to convince them that

the appellants were only liable for taxes on that part of the ¼ oil interest reserved as was owned by them, and that lessee owed the taxes as to the reversionary interest. No question but what this tax was levied upon the assumption and with the knowledge of tax assessor and the Board of Equalization that this was a continued production.

■■ We are of the opinion that the Court erred as to its ruling as to the valuation and assessment and we are also of the opinion that there was sufficient evidence to go to the jury on the issue as to the valuation and assessment of taxes on the oil payment and that the case should be reversed and remanded. In the case of the State v. Quintana Petroleum Co., 134 Tex. 179, 133 S.W.2d 112, 117, in discussing this point, said:

"It is apparent that, where there is substantial production, as here, the right to a part of the minerals as they are produced, subject to the limitation that the right ceases when a certain sum has been realized from the proceeds thereof, is not of as great value as would be the right to an equal part of the minerals not subject to limitation; and it is further apparent that the value of the lessor's right or interest so limited, assuming continued production, will decrease each year. These facts must be taken into consideration in valuing such interest for taxation. Likewise it is apparent that the leasehold estate under this lease has a greater value on account of the limitation imposed upon the reserved ⅞₂ interest, with the provision that upon the termination of title under the reservation the ⅞₂ shall vest in the lessee, than it would have if the ⅞₂ interest had been reserved without limitation; and it is further apparent, still assuming continued production, that the leasehold estate will become more valuable each year as the time approaches when the ⅞₂ interest will vest in the lessee. And these facts must be taken into consideration in valuing the leasehold estate for taxation. When this method of valuing the property is used no part

of the ⅞₂ of the minerals escapes taxation. Its value for taxation is represented by the valuation placed upon the lessor's reserved and limited ⅞₂ interest, together with the increased valuation placed upon the leasehold estate by reason of the limitation and the provision for the vesting of the interest in the lessee upon the satisfaction of the limitation."

In Whelan v. State, Tex.Civ.App., 252 S.W.2d 271, 273, it is said:

"If plaintiffs' sands were materially below this average thickness of 22 feet, then they would be penalized under the formula adopted while others with a deeper reserve sand would be rewarded. 'If the board arbitrarily adopted Erainborg's report and adhered thereto without regard to (its) true value of the property, then it employed a wrong principle in fixing the value of the property and the assessment must be set aside.' Simkins v. City of Corsicana, Tex.Civ.App., 86 S.W.2d 792, 794. And this may be so, 'without showing a dishonest intent on the part of the Board.' 40 T.J., p. 161; see also 40 T.J., Taxation, Sec. 115."

We are of the opinion that the Court erred in granting judgment against appellants, jointly and severally, in this case and rendering a personal judgment against persons for taxes due on property that had never belonged to the parties taxed.

In Bashara v. Saratoga Independent School District, 139 Tex. 532, 163 S.W.2d 631, 633, the Court said:

"We think Justice Greenwood decided the question when he said, in Hager v. Stakes, Tax Collector, 116 Tex. 453, 294 S.W. 835, 842, 'Real estate is ordinarily taxed as a unit; yet, where there have been severances by conveyance, exception, or reservation, so that one portion of the realty belongs to one person and other portions to others, each owner should pay taxes under proper assessment against him of the portion owned by him. The fact that a partion may consist of minerals or of a fractional interest therein

makes no difference.' Since respondent's officials possessed either the knowledge or the means of knowledge that Mrs. Baker owned a taxable interest in the 100 acres, their action in rendering the entire interest for taxes against Bashara was arbitrary, illegal and void. It was their duty under proper assessment to seek from Mrs. Baker the taxes justly due on the interest owned by her and from Bashara only those justly due on the interest owned by him. Therefore, we hold the assessments for the years 1934 to 1938, both inclusive, were void."

We have examined all of the Assignments of Error and the record carefully, and since we are of the opinion that the case must be reversed and remanded for a new trial for the reasons stated above, and believing that the other Assignments of Error would not arise in another trial, we deem it unnecessary to pass on the other assignments. For the errors pointed out, the judgment will be reversed and the cause remanded.